[Sac. No. 2457.    In Bank.—January 15, 1918.]

JAMES P. GUINN, Respondent, v. O. O. McREYNOLDS et al., Defendants; COUNTY OF TULARE (a Public Corporation), Appellant.

LIEN—HORTICULTURAL COMMISSION—LIEN OF COUNTY FOR ERADICATION OF INFECTIOUS PESTS—VALIDITY OF STATUTE.—The enactment of section 2322a of the Political Code, giving counties a lien for the expense of eradicating infectious diseases and insect pests under the direction of the horticultural commission was a valid exercise of police power.

ID.—STATUTORY LIENS — TAX LIEN — MORTGAGE LIEN — ORDER OF PRIORITY.—The statutory lien given a county for the expense of eradicating insect pests bears some analogy to a tax or special assessment, and a tax lien does not rank ahead of a pre-existing mortgage or other contract lien, unless the act creating the lien has given it priority either in express terms or by reasonable inference to be found in the statute.

ID.—PRIORITY OF LIENS—GENERAL RULE—CODE PROVISION.—The general rule for the relative rank of liens is that declared by section 2897 of the Civil Code to the effect that different liens upon the same property have priority according to the time of their creation (except in cases of bottomry and respondentia).

ID.—PRIORITY OF LIENS UNDER POLITICAL CODE, SECTION 2322a.—Prior to the amendment of 1917 (Stats. 1917, p. 631), there was nothing in section 2322a of the Political Code indicating an intention to make the lien of a county for the eradication of insect pests, infectious diseases, or noxious weeds, superior to existing mortgages.

APPEAL from a judgment of the Superior Court of Tulare County.    W. B. Wallace, Judge.

The facts are stated in the opinion of the court.

Frank Lamberson, James M. Burke, and P. D. Nowell, for Appellant.

Murry & Knupp, for Respondent.

SLOSS, J.—The plaintiff brought this action to foreclose a mortgage of land in Tulare County. The county of Tulare, one of the defendants, set up a claim of lien under section 2322a of the Political Code. The county's lien arose after the recording of plaintiff's mortgage. The court below held

that the mortgage was superior to the lien claimed by the county. The correctness of this conclusion presents the only question for decision.

Section 2322a, as it read at the time of the transactions here involved, provided that the county horticultural commissioner should, if he found premises, orchards, trees, plants, etc., in the county infected with infectious diseases, scale, insects, or other pests, notify the owner or person in charge or in possession of the premises to eradicate or destroy the said insects or pests within a given time. Any places, orchards, or nurseries thus infected were declared to be a public nuisance, and in the event that such nuisance were not abated within a specified time after such notice, it was made the duty of the county horticultural commissioner to cause the nuisance to be abated by eradicating or destroying such diseases, insects or other pests. The section then proceeded as follows: ''The expense thereof shall be a county charge, and the board of supervisors shall allow and pay the same out of the general fund of the county. Any and all sum or sums so paid shall be and become a lien on the property and premises from which said nuisance has been removed or abated in pursuance of this chapter. A notice of such lien shall be filed and recorded in the office of the county recorder of the county in which the said property and premises are situated, within thirty days after the right to the said lien has accrued. An action to foreclose such lien shall be commenced within ninety days after the filing and recording of said notice of lien, which action shall be brought in the proper court by the district attorney of the county in the name and for the benefit of the county making such payment or payments, and when the property is sold, enough of the proceeds shall be paid into the county treasury of such county to satisfy the lien and costs; and the overplus, if any there be, shall be paid to the owner of the property, if he be known, and if not, into the court for his use when ascertained.''

The section, incorporated in the Political Code in 1907, and amended in 1909, was based upon prior acts of similar purport. (Stats. 1881, p. 86; Stats. 1889, p. 413; Stats. 1891, p. 268.) Its enactment was, as both parties are agreed, a valid exercise of legislative power. (*County of Los Angeles* v. *Spencer*, 126 Cal. 670, [77 Am. St. Rep. 217, 59 Pac. 202]; *County of Riverside* v. *Butcher*, 133 Cal. 324, [65 Pac. 745].)

It is also conceded that there would be no constitutional objection to a legislative provision making the county's lien superior to pre-existing mortgages or other liens created by private contract. (See *Provident Institution for Savings* v. *Jersey City,* 113 U. S. 506, [28 L. Ed. 1102, 5 Sup. Ct. Rep. 612].) The question is whether the statute in fact undertook to give such priority.

The law was passed in the exercise of the police power. (*County of Los Angeles* v. *Spencer, supra.*) For the purposes of the present discussion the burden imposed on the land bears a certain analogy to a tax or special assessment. A lien for unpaid taxes or assessments is generally held to be superior to all contract liens, whether prior or subsequent in time. But the authorities declare, virtually without dissent, that even a tax lien is not entitled to rank ahead of a pre-existing mortgage, or other contract lien, unless the legislative enactment creating the tax lien has given it priority. (37 Cyc. 1143.) The priority need not be declared in express terms. It is enough if the intent to postpone contract liens appear by reasonable inference from the provisions of the act. But the authorization for displacing the earlier lien must, under all the decisions, be found in the statute. Even such cases as *Carstens* v. *Seattle,* 84 Wash. 88, [Ann. Cas. 1917A, 1070, 146 Pac. 381], and *Morey* v. *Duluth,* 75 Minn. 221, [77 N. W. 829], relied on by the appellant, rest their holding that the mortgage lien was postponed upon the ground that the legislative acts in question, properly interpreted, disclosed an intention to make the tax or assessment lien superior.

The general rule for fixing the relative rank of liens is declared by section 2897 of the Civil Code, which declares that "other things being equal, different liens upon the same property have priority according to the time of their creation, except in cases of bottomry and *respondentia.*" This rule will govern unless, in any given case, the statute prescribes otherwise. (See *Mortgage Securities Co.* v. *Pfaffmann, ante,* p. 109, [169 Pac. 1033].) In dealing with tax or assessment liens, as with others, our decisions have recognized that the question of priority is one of legislative intent. Where, accordingly, the tax or assessment lien is preferred to an earlier contract lien, the basis of priority is found in the statute. In *California Loan and Trust Co.* v. *Weis,* 118 Cal.

489, [50 Pac. 697], it was held that the lien for personal property taxes, imposed by our law upon the real property of the person assessed, was superior to pre-existing encumbrances upon the land. The question, said the court, "depends for its determination entirely upon statutory enactment," and the expression of a legislative intent that the tax lien should have priority was found in sections 3716 and 3788 of the Political Code, the former declaring that the lien is not removed until the taxes are paid, or the property sold, and the latter that the tax deed conveys to the grantee the absolute title to the land, free of all encumbrances, excepting liens for subsequent taxes. Similarly, in *German Savings and Loan Society* v. *Ramish,* 138 Cal. 120, [69 Pac. 89, 70 Pac. 1067], where the lien of street improvement bonds (Stats. 1893, p. 33) was held to have priority, it was pointed out that the statute expressly provided that the lien should be "a first lien upon the property," and that it made the provisions of the Political Code for the collection of delinquent state and county taxes, including section 3788, applicable to sales under the bond act. The opinion, after referring to these features of the statute, declares that "the intention seems to be clearly manifested that the bond lien shall be prior to all liens." In the decisions holding that the liens of assessments levied by irrigation districts or reclamation districts rank ahead of mortgages earlier in time (*Williams* v. *Cooper,* 124 Cal. 666, [57 Pac. 577]; *Weinreich* v. *Hensley,* 121 Cal. 647, 656, [54 Pac. 254]), there is no specific reference to any statutory declaration of such priority. But, on examination of the acts involved, it will be seen that they plainly show the legislative intent. The irrigation district law provides that the deed of the collector conveys to the grantee absolute title, free of all encumbrances, except when the land is owned by the United States or this state. (Stats. 1887, p. 41.) The Political Code contains similar provisions with respect to reclamation districts. (Pol. Code, sec. 3466.)

We find nothing in section 2322a of the Political Code which can be said to indicate an intent to make the county's lien superior to other liens earlier in time. The section is silent on the subject of priority. The purpose of the expenditure for which the lien is given would not, of itself, justify a conclusion that the legislature must have intended to give it

superiority over all other claims, if, indeed, such inference can ever arise from the mere nature of the charge. In the case of assessments for local improvements, it may be said that the improvement confers a benefit on the land itself, and thus enhances the security of the mortgagee. But this is not necessarily true of expenditures made under the law here in question. The destruction of infected or diseased trees may diminish the value of the land, for the benefit, primarily, of adjoining property.

It is provided by the section that when the property is sold on foreclosure of the county's lien, the surplus after satisfying the lien shall be paid to the owner of the property, or into court for his use. The owner of the property is the mortgagor or his successor. Under the law of this state, the mortgagee has no ownership or interest in the property. He has merely a lien, which is an incident of the secured debt. (*Mc-Millan* v. *Richards*, 9 Cal. 365, [70 Am. Dec. 655]; *Savings & Loan Society* v. *McKoon*, 120 Cal. 177, [52 Pac. 305].) The result, then, of holding the county's lien superior would be to deprive the mortgagee of his lien, and, at the same time, to take from him any right to participate in the proceeds of the sale. This provision for the payment of the surplus therefore furnishes some ground, though perhaps not a controlling one, for saying that the legislative intent, so far as disclosed by the terms of the act, was that pre-existing mortgage liens should not be affected by the county lien, but that the latter should operate only against the interest of the owner. At any rate, we do not find in the act any provision indicating an intention to make the county lien superior to existing mortgages, and it must be held, as was held by the court below, that the mortgagee is not affected by the subsequently attaching lien of the county.

By amendment to section 2322a, adopted in 1917 (Stats. 1917, p. 631), the legislature has removed all doubt on the question, for future cases, by adding an express provision declaring the superiority of the county's lien. But this amendment cannot, of course, affect the present litigation, the rights here involved having vested before the law was changed.

The judgment is affirmed.

Shaw, J., Melvin, J., Victor E. Shaw, J., *pro tem.*, and Angellotti, C. J., concurred.