[Civ. No. 215. Fourth Appellate District.—June 9, 1930.]

W. A. BOLTON, Respondent, v. TERRA BELLA IRRIGATION DISTRICT, Appellant.

Farnsworth, Burke & Maddox for Appellant.

Herbert C. Kelly for Respondent.

Hankins & Hankins, Griffin & Boone, A. L. Cowell and Charles L. Childers, as *Amici Curiae.*

BARNARD, J.—This action is in form one of partition, although the plaintiff seeks to quiet his title against the defendants. On June 30, 1924, plaintiff, with one T. G. Kelly, purchased at a tax sale a parcel of land situated within the borders of Terra Bella Irrigation District, in Tulare County, California. The land was sold for delinquent county taxes of the fiscal year 1918–19, and said purchasers received a deed from the county tax collector of Tulare County. It is admitted that all proceedings leading

up to and included within this sale were regular and valid in all respects. Commencing with the year 1918 and up to and including the year 1924, Terra Bella Irrigation District had in each and every year levied assessments for district purposes on said land. No part of these assessments has even been paid and at the date of the above-mentioned sale, they were all delinquent. From year to year the land was noticed for sale for these delinquencies, and certificates of sale therefor were delivered to said Irrigation District in accordance with the Irrigation District Act, but no deed has yet been passed. Plaintiff commenced this action against the said T. G. Kelly and numerous other defendants for the partition of a number of pieces of land, including the land above referred to, seeking to quiet his title to the same, and joining the appellant Irrigation District as a party defendant, as claiming a lien on the particular parcel referred to. The defendant Terra Bella Irrigation District appeared and set up its lien for the unpaid assessments levied by it, as aforesaid. Defendant Kelly joined with plaintiff against the Terra Bella Irrigation District. After a trial upon stipulated facts, the trial court adjudged that as against the plaintiff and T. G. Kelly, the defendant Terra Bella Irrigation District has no lien upon the land and entered its interlocutory decree accordingly. The defendant Irrigation District has appealed from that portion of the decree.

The only question herein presented is whether or not a purchaser of land upon a sale thereof for delinquent county taxes, takes title thereto free from any lien for delinquent irrigation district taxes or assessments levied on the same land.

Section 40 of the Irrigation District Act provides, "The assessment upon land is a lien against the property assessed from and after the first Monday in March for any year." (Henning's Gen. Laws, p. 1255.) County taxes also become a lien on the first Monday in March in each year. (Sec. 3718, Pol. Code.) ▮ An irrigation district is a public agency of the state. It has been held that the legislature could, without referring the matter to local authority, institute and carry out projects, having purposes similar to those of an irrigation district. (*People* v. *Sacramento Drainage Dist.*, 155 Cal. 373 [103 Pac. 207].) The legislature has power to determine how revenues shall be levied and col-

lected, whether by the state itself or by local legislative or administrative agencies. The county is an agency of the state for performing certain functions of government. The legislature has likewise provided for, and authorized, irrigation districts to carry out another function of government. In the case of *In re Madera Irr. Dist.*, 92 Cal. 296 [27 Am. St. Rep. 106, 14 L. R. A. 755, 28 Pac. 272, 675], in discussing the nature and powers of an irrigation district the court said:

"For the purpose of meeting the cost of acquiring this property, the district is authorized, upon the vote of a majority of its electors, to issue its bonds, and these bonds and the interest thereon are to be paid by revenues derived under the power of taxation, and for which all the real property in the district is to be assessed. Under this power of taxation,—one of the highest attributes of sovereignty,—the title of the delinquent owner of the real estate assessed, may be divested by sale, and power is conferred upon the board of directors to establish equitable by-laws, rules, and regulations for the distribution and use of water among the owners of said lands, and generally to perform all such acts as shall be necessary to fully carry out the purpose of the act. Here are found the essential elements of a public corporation, none of which pertain to a private corporation. The property held by the corporation is in trust for the public, and subject to the control of the state. Its officers are public officers, chosen by the electors of the district, and invested with public duties. Its object is for the good of the public, and to promote the prosperity and welfare of the public. 'Where a corporation is composed exclusively of officers of the government, having no personal interest in it, or with its concerns, and only acting as organs of the state in effecting a great public improvement, it is a public corporation.' (Angell and Ames on Corporations, sec. 32.)"

Such districts have been held to be public agencies. (*Lindsay-Strathmore Irr. Dist.* v. *Superior Court*, 182 Cal. 315 [187 Pac. 1056].) In the case of *Whitman* v. *Anderson-Cottonwood Irr. Dist.*, 60 Cal. App. 234 [212 Pac. 706, 708], the court said:

"In fact, it has been consistently held by the Supreme Court from the beginning, that these districts created under

the elaborate scheme devised for their organization and operation by the legislature are public agencies for the promotion of a public purpose."

The general rule in reference to the relation of state taxes to local assessments is thus put in 37 Cyc. 1478.

"Where the statute makes the state taxes a superior lien to municipal taxes or local assessments, or where both classes of taxes are to be collected in the same manner and by the same proceedings, those of the latter class will be cut off and their lien extinguished by a sale for state taxes in which the local taxes or assessments might have been included. But otherwise the purchaser will take subject to existing taxes of the inferior class."

It is true that an irrigation district assessment, although it be an annual charge, has been usually interpreted as an assessment for benefits. (*San Diego* v. *Linda Vista Irr. Dist.*, 108 Cal. 189 [35 L. R. A. 33, 41 Pac. 291]; *In re Madera Irr. Dist., supra; Barber* v. *Galloway*, 195 Cal. 1 [231 Pac. 34].) In referring to the method used by irrigation districts in making assessments, the Supreme Court has said:

" . . . this court . . . basing its decision upon the very early case of *Emery* v. *San Francisco*, 28 Cal. 372, as approved in the case of *In re Madera Irr. Dist.*, 92 Cal. 325 [27 Am. St. Rep. 106, 14 L. R. A. 755, 28 Pac. 272, 675], . . . held that the legislature was authorized to apportion the amount of money to be raised in order to meet the expenses of the improvement according to either the *ad valorem* or assessment according to benefits plan, or to adopt any principle of apportionment which might be devised under the sovereign power of taxation." (*County of Los Angeles* v. *Hunt*, 198 Cal. 753 [247 Pac. 897, 902].)

In the Municipal Utility Act (Stats. 1921, p. 245), the distinction between assessments and taxes is entirely eliminated. Under that act its so-called assessments become taxes and are collected with other taxes. While county taxes are made up of a composite rate for general purposes, for road districts, for school districts and for a number of other purposes, irrigation taxes are not included. It is true, however, that such assessments are levied by an agency created by the state for a public purpose, and under an authority delegated by the state. While the cases have referred to the annual

assessments levied by an irrigation district as assessments rather than as taxes, they are in many respects more like county taxes than like assessments for street improvements or assessments for the benefit of other particular property. While general county taxes are often referred to as state taxes, as a matter of fact, no taxes for purely state purposes have been levied on real estate in California since 1911, but all general taxes have been levied by authority delegated from the state, either to the county or some other subdivision or district. During the same time there has also been apparent a growing tendency, as shown by the statutes adopted by the legislature, to treat the taxes or assessments levied under such delegated authority as equal.

The respondent relies upon the decisions in a number of cases from other jurisdictions and in such cases as *Dougherty* v. *Henarie*, 47 Cal. 9, and *California Loan etc. Co.* v. *Weis*, 118 Cal. 489 [50 Pac. 697, 699]. In *Dougherty* v. *Henarie* the court held that a deed based upon a tax sale transferred the title free from all prior liens for taxes or assessments. This decision was based on a statute then existing which provided that the tax deed "shall convey to the grantee the absolute title to the lands described in said deed, free and clear of all encumbrances, liens, claims, rights, titles and interest of every kind, of any person or persons . . . excepting only the right and title of the United States or of the State of California," and further that "all right, title, interest, claim, and possession acquired by any individual, corporation, or body politic has been subrogated to the grantee." In *California Loan etc. Co.* v. *Weis, supra,* the court also held that a tax deed conveyed the property free from any other lien basing its decision upon the statute as it then existed, which provided that such deed conveys to the grantee the absolute title to the land described therein free of all encumbrances except the lien for taxes which may have attached subsequent to the sale. This case also held that while it is within the power of the legislature to make the lien of taxes paramount to all other liens upon the land, so that when a sale is made the purchaser takes title free from all encumbrances, whether or not this state has so provided is to be determined only by its statutes, the court saying: "As this matter, the power being conceded, depends for its determination entirely upon statutory enactment, adjudica-

tions in sister states will be of little value unless based upon identical laws.''

This case being one where an individual is seeking to quiet title against assessments levied by an agency created and empowered to levy assessments by authority delegated from the state, his claims must rest on his strict legal rights and these depend upon the proper interpretation of statutory enactments. The question of priority is one of legislative intent. In *Guinn* v. *McReynolds,* 177 Cal. 230 [170 Pac. 421, 422], the court said:

''A lien for unpaid taxes or assessments is generally held to be superior to all contract liens, whether prior or subsequent in time. But the authorities declare, virtually without dissent, that even a tax lien is not entitled to rank ahead of a preexisting mortgage or other contract lien, unless the legislative enactment creating the tax lien has given it priority,'' citing 37 Cyc. 1143, where the rule is stated thus:

''It is competent for the legislature to make taxes a paramount lien on the property of the taxpayer, and this has been done in many states, the consequence being that a lien for taxes takes precedence of every other lien or claim upon the property of whatsoever kind, however created, and whether attaching before or after the assessment of taxes. But this preference does not belong to the tax lien unless it is so declared by statute, and a law, for example, which merely enacts that taxes shall be a lien on real property does not make them a first lien.''

Again in the case of *Guinn* v. *McReynolds* the court said:

''In dealing with taxes or assessment liens, as with others, our decisions have recognized that the question of priority is one of legislative intent.''

There is no statute making county taxes paramount to irrigation district assessments in the sense here claimed, unless this results from a proper interpretation of those sections of the Political Code governing deeds given to an individual in pursuance of sales whereby former owners have been divested of title for nonpayment of taxes.

Prior to 1913 all sales for delinquent state and county taxes were made only to the state, the form of such a deed to the state being provided in section 3785 of the Political Code. In 1913, sections 3764 and 3771 of the Political Code

were amended to provide also for a sale by the tax collector direct to an individual, and it is pursuant to such a sale that the respondent herein claims title. In 1913 section 3785b was added to the same code, providing the form of a deed where real property should be sold to an individual instead of to the state, in accordance with the amendments of that year, and also providing that such deed should not be delivered until redemption had been made of all taxes and penalties of any previous tax sale or delinquency. It further provided as follows:

"The provisions of sections 3786 and 3787 of this code are hereby made applicable to the deed herein provided for."

Section 3786 has not since been amended and provides that such deed is primary evidence of certain things set forth in that section. Section 3787 provides that such deed is conclusive evidence of certain other proceedings, and also provides what title shall pass by the deed. In 1913, that portion was amended to provide that taxes levied for municipal purposes should be an additional exception to the clear title passed by such a deed. In 1917 that portion of section 3787 was again amended to include irrigation district taxes as an additional exception, and then read as follows:

"Such deed conveys to the state the absolute title to the property described therein, free of all encumbrances, except any lien of taxes levied for municipal or irrigation district purposes and except when the land is owned by the United States or this state . . ."

Again in 1927, this section was amended so that that portion thereof reads as follows:

"Such deed conveys to the state the absolute title to the property described therein, free of all encumbrances, except any lien for taxes levied for municipal, or for irrigation, reclamation, protection, flood control, public utility or other district purposes, or for special assessments which are collected on tax-rolls, and except any lien or assessment for other amounts which by law are collected upon tax-rolls by or for account of municipalities, and except interest and penalties on the same, and other amounts which would be paid municipalities or for their account in the event of redemption of such property from sales for such taxes, assessments or other amounts, and except when the land is owned by the United States or this state . . ."

Section 3785b was amended in 1925 to correct the reference therein to section 3771 of the same code. Prior to this change in 1925, 3785b had authorized a deed whenever a sale had been made to an individual, "in pursuance of section 3771 of this code." But in 1921 the legislature had added 3771a to that code, and the provision authorizing a sale to an individual, instead of to the state, which had previously been in section 3771, was then placed in the new section 3771a.

After the above-mentioned changes in 1913, the provisions of section 3787 of the Political Code referred to the deed provided for in section 3785b, as well as to that of section 3785. In *Bernhard* v. *Wall,* 184 Cal. 612 [194 Pac. 1040, 1045], the court defines the meaning of the phrase "such deed" as used in these sections, as follows:

"It is proper here to explain that the phrase 'such deed,' with which both sections 3786 and 3787 begin, must, in the present condition of the code, be understood to refer both to the deed authorized by section 3785 and to that authorized by section 3785b. When the code was first enacted, and until the year 1909, the three sections—3785, 3786 and 3787 —appeared therein in regular consecutive order, with no intervening sections. The phrase 'such deed' in sections 3786 and 3787 then necessarily referred to section 3785, it being then the only section authorizing a tax deed. In 1909 section 3785a, and in 1913 section 3785b, were interpolated between section 3785 and section 3786, thus giving rise to some uncertainty as to the particular deed or deeds to which the phrase 'such deed' applied. We are satisfied that it now refers both to section 3785 and section 3785b, and applies to the deeds authorized by both sections."

While the court there mentions only the phrase "such deed" in the first paragraph of the section, it is perfectly apparent that the same reasoning applies to the same phrase in the second paragraph thereof.

Respondent argues that it is a general rule that when one statute by reference incorporates another, the effect is as though the wording of the incorporated statute had been written at length into the incorporating statute, and that no subsequent amendment or repeal of the statute incorporated has any effect upon the incorporating statute. In support of this he cites *People* v. *Whipple,* 47 Cal. 592; *Spring*

*Valley W. W.* v. *San Francisco,* 22 Cal. 434; *Ventura County* v. *Clay,* 112 Cal. 65 [44 Pac. 488]; *In re Burke,* 190 Cal. 326 [112 Pac. 193]; *Vallejo* v. *Reed,* 177 Cal. 249 [170 Pac. 426]; *Ramish* v. *Hartwell,* 126 Cal. 446 [58 Pac. 920, 921]. He therefore argues that since the amendment to section 3787, making irrigation district taxes an additional exception to the clear title passed by such deed, was adopted in 1917, and such a provision was not in that section in 1913 when the provisions of said section were by the terms of section 3785b made applicable to the deed therein authorized, this *ipso facto* gives priority to state taxes over irrigation district taxes. As we have heretofore noted, this depends upon legislative intent. In *Ramish* v. *Hartwell, supra,* the court uses the following language:

"It is a rule of statutory construction that the adoption in one statute, for the purpose of carrying its provisions into effect, of the provisions of another statute by reference thereto, does not include subsequent modifications of these provisions in the statute referred to, unless a clear intent to do so is expressed. This rule is subject to a qualified exception in cases of the adoption into a special act of the provisions of law then in force by virtue of general laws. In such cases, subsequent modifications of the general law will be deemed to be within the intent of such adoption, so far as they are consistent with the purposes of the particular act. (See *Kirk* v. *Rhoads,* 46 Cal. 403.) A repeal of the adopted statute will not take from the adopting statute the operative force of these provisions, so far as they may be necessary to carry the later statute into effect, but these provisions will be regarded as if they had been originally incorporated therein at length. (*Spring Valley W. W.* v. *San Francisco,* 22 Cal. 434; *People* v. *Clunie,* 70 Cal. 504 [11 Pac. 775]; *Collins* v. *Blake,* 79 Me. 218 [9 Atl. 358]; *Darmstaetter* v. *Moloney,* 45 Mich. 621 [8 N. W. 574]; Sutherland on Statutory Construction, sec. 257.) Under the same principles, any amendment of these provisions of the statute thus adopted, whether it be a particular act or a general law, which so far modifies them as to subvert the purpose of the statute by which they were adopted, will be regarded in the same light as a repeal. The main object of all statutory construction is to ascertain the legislative will, and, as it is to be assumed that the legislature

intends its acts to have effective operation, such amendments will not be construed as depriving the adopting statute of all effect, unless there is a clear necessity for such construction.''

In the decisions relied upon by respondent the Supreme Court has, of course, followed the intention of the legislature. In *People* v. *Whipple,* the incorporating statute in creating an office defined the duties thereof by referring to another statute, and the court held that a later repeal of the other statute did not affect the incorporating statute as it, in effect, included the words of the other statute within itself. *Ventura Co.* v. *Clay,* 112 Cal. 65 [44 Pac. 488], involves a similar state of facts. In *Spring Valley W. W.* v. *San Francisco* it was held that the amendments made such a complete change that the sections referred to were entirely insufficient to cover the matter in question without the addition of other sections. *In re Burke* expressly reserves an opinion on the point now under discussion so far as the facts in that case are concerned. In *Vallejo* v. *Reed,* an entirely new section of the number in question had later been adopted, which contained no vestige of the original section. We think that these cases are not controlling in the matter before us, and that the instant case comes rather under both of the exceptions mentioned in *Ramish* v. *Hartwell.*

Since sections 3786 and 3787 contained in 1913, and still contain, all of the statutory provisions defining the effect of the deed in question and what title shall pass thereby, including all of the general laws on that particular subject, it would seem to come under one of the exceptions noted. Also, a careful reading of all of the sections involved seems to disclose a clear intent on the part of the legislature to make amendments of section 3787 apply to section 3787b. Prior to 1913, section 3787 referred to the deed to the state mentioned in section 3785. An entirely new plan for disposing of land upon which taxes had remained unpaid for five years was introduced by the amendments of 1913, and section 3785b was interpolated for the purpose of providing for the giving of a deed in accordance with such new plan. The fact that it made applicable to the new deed therein provided for, all of the statutory provisions covering the title that should be conveyed thereby and the effect thereof, which had

applied and which continued to apply to the other and older plan of deed to the state, which provisions were all set forth in sections 3786 and 3787, is a strong indication that it was the intention of the legislature to make the deed to an individual, in respect to the title conveyed, a counterpart of the deed to the state. No good reason appears why the two deeds should be different, nor why the one to an individual should convey more than the one to the state, and a reading of the code sections indicates that such was not the legislative intent. Having in mind the purpose to be accomplished, and the fact that a new deed was being provided for, that otherwise followed the plan of the older deed, the language used, ''The provisions of sections 3786 and 3787 of the code are hereby made applicable to the deed herein provided for'' lends some support to this view. It must also be borne in mind that the amendment of 1917 made no change in the general purpose of section 3787, but merely included another item of the same general nature. It is also most significant that when in 1925 it became necessary for the legislature to amend section 3785b, in order to correct a reference therein to section 3771 of the Political Code, as hereinbefore referred to, although section 3787 had in the meantime been amended by the insertion of the clause about irrigation district taxes, the provision now under consideration was not changed. It would, therefore, seem that it was within the intention of the legislature in adopting section 3785b in 1913, to include such an amendment to 3787 as followed in 1917.

In the case of *Gottstein* v. *Holmes,* 89 Cal. App. 145 [264 Pac. 310, 311], decided in 1928, in passing upon a tax sale made in 1923 when the law was the same as it was when the sale here in question was made in 1924, the court said: ''The provisions of section 3787 are, by section 3785b, expressly made applicable to deeds executed by the tax collector conveying lands sold to the state to purchasers after the five-year period of redemption.'' No exceptions are there noted.

Even if it should be held that the amendment of section 3787 in 1917 did not become a part of section 3785b, through the reference provision therein, still section 3787 as amended in 1917, was in full force and effect at the time respondent's rights arose and applies to his case as a separate law. Aside from section 3787 there is no statute providing what

such a deed as is relied on by respondent shall convey to him. In the absence of statutes providing otherwise, respondent's deed would be subject to all existing liens which would include the irrigation district assessment liens here in question. Respondent is forced to rely upon section 3787 to place his title above other encumbrances. He does, in fact, place implicit reliance upon it, insisting, however, that he is entitled to stand upon it as it existed in 1913. If, however, that section applied to his deed in 1924, it applied as it stood in 1924, and his deed was subject to taxes levied for irrigation district purposes. Irrespective of whether this amendment was included in section 3785b by legislative intent, no reason appears why it is not, of itself, an additional qualification of the effect of respondent's deed. There is nothing in section 3785b, as it stood in 1913, including its reference to section 3787, which forbids the adoption of new qualifications of the same deed. Section 3787, as it stood in 1924, applied to the deed relied on by respondent just as much as if the 1917 amendment thereto had been put into section 3785b, or adopted as an additional section of the code.

The fallacy of such an interpretation of these various statutes as is insisted upon by respondent, is seen from the fact that to take the exact language used, without regard to the real meaning and intent of the legislature, and without allowing for obvious errors in changing certain sections without correcting co-related sections, would necessarily result in the holding that respondent has no deed at all, because he relies upon a deed given in accordance with section 3785b of the Political Code, and insists that he is entitled to rely on that section absolutely as it stood in 1913, unaffected by later amendments of any other sections and governed by the strict language of that section alone. But he acquired his deed under a sale made in 1924. At that time section 3785b provided that when property had been sold to a purchaser at delinquent tax sale, other than the state of California, in pursuance to section 3771 of that code, a deed should be issued in the form set forth in said section. But at that time section 3771 of this code did not provide for or authorize or contemplate any deed. In 1921 the law had been changed and the provision authorizing such a deed had been moved from section 3771 to section 3771a of that code.

■ In giving effect to the plain intent of the legislature it is necessary to read the various sections together and in relation to each other. "A statute should always be so construed, if reasonably possible, as to give each part thereof the meaning and effect, which from the act as a whole, appears to have been intended." (*In re Reineger*, 184 Cal. 97 [193 Pac. 81, 83].) ■ There can be no question that the word "taxes" as used in the 1917 amendment to section 3787 refers to the annual assessments of irrigation districts. The word includes both general taxes and special assessments. (*Los Angeles County F. C. Dist.* v. *Hamilton*, 177 Cal. 119 [169 Pac. 1028].) While an assessment is not in all respects the same as a tax, it has many of the same qualities of a tax and an irrigation district assessment has been specifically given a lien on the real property within the district, and the provisions of section 3787 of the Political Code make such a deed as is relied on by the respondent, subject to irrigation district assessments.

An additional reason why the irrigation district assessment in question has not been wiped out by the tax sale referred to is found in another express provision adopted by the state legislature. In speaking of such assessments, section 46 of the California Irrigation District Act says:

" . . . on filing the certificates (of sale) with such County Recorder the lien of the assessments vests with the purchaser, and is only divested by the payment to him, or to the collector for his use, of the purchase money . . . "

While, as has been pointed out, the decisions of other states are of little value unless based upon similar statutes, we desire to call attention to a decision from the state of New York. The New York statute provided that a conveyance upon a sale of land for a state tax vested in the grantee an absolute estate in fee, subject, however, to all of the claims which the people of the state had thereupon for taxes or other liens or encumbrances. We take it this statute is not essentially dissimilar from our own in the respect under discussion, since an irrigation district is a public agency deriving its power to tax from the state itself. In *Rochester* v. *Kappell*, 86 App. Div. 224 [83 N. Y. Supp. 640], affirmed in 177 N. Y. 533 [69 N. E. 1121], the court said:

"The tax for the nonpayment of which the sale to appellant was made included a state tax to be collected by the

county, and it is claimed that the only tax liens which are preserved under the language of this section, are pure state taxes. This, we apprehend, is too narrow a construction of the language of the section. The source of all power to tax within the state, whether by the state, the city, the town, or the county, is the legislature. The legislature has the right to provide for the protection of all such taxes. The policy of the law is to insure the collection of all taxes. We must assume that the legislature intended no conflict between the systems of taxation provided by it for the several political divisions above referred to. It could not have intended that a sale for taxes by one division should cut off and nullify sales made by other divisions for other taxes. The more reasonable construction of this section is one that preserves all liens for taxes, whether state, county, town or city. All of these political subdivisions represent the people of the state, and their taxes are all claims of the people of the state. This construction results in effect in the principle that no individual can secure a perfect title to real property, purchased upon a tax sale, without paying all taxes thereon imposed by any political subdivision of the state. This is a reasonable and salutary doctrine.''

In *Webster* v. *Board of Regents,* 163 Cal. 705 [126 Pac. 974, 976], in referring to a tax sale as against a mortgage held by the state the court said:

''The rule applicable thereto is thus expressed in *People* v. *Doe,* 36 Cal. 222: 'The Constitution and laws upon the subject of taxing property, are, therefore, to be understood as referring to private property and persons, and not including public property of the state, or any subordinate part of the state government.' (See, also, *People* v. *McCreery,* 34 Cal. 456; *Low* v. *Lewis,* 46 Cal. 552; *Doyle* v. *Austin,* 47 Cal. 360; *Smith* v. *Santa Monica,* 162 Cal. 221 [121 Pac. 920].) The general rule applied in all such cases is that statutes authorizing liens on or forced sales of property, generally, will not be held applicable to public property, unless the intention to make them so expressly or plainly appears.''

In the absence of statutory provisions to the contrary, the same reasoning would apply to an attempt upon the part of an individual to wipe out a part of the taxes or assessments legally levied under authority of the state government. We think this cannot be done unless that

result clearly and expressly appears to be authorized by statute. Any doubt would necessarily have to be resolved in favor of the public institution and against the individual.

█ In such an action as the one at bar, an individual must stand upon his legal rights and cannot ask for equitable relief against taxes authorized by the state. (*Couts* v. *Cornell*, 147 Cal. 560 [109 Am. St. Rep. 168, 82 Pac. 194]; *Esterbrook* v. *O'Brien*, 98 Cal. 671 [33 Pac. 675].) In *Imperial Land Co.* v. *Imperial Irr. Dist.*, 173 Cal. 660 [161 Pac. 113, 116], the court said:

"The complaint contained no offer to pay the amount due. 'It is now firmly settled by our decisions that where a property owner applies for equitable relief against the public authorities, as, for example, to restrain proceedings for the collection or enforcement of taxes assessed against it, or to enjoin the execution of a tax deed, or to cancel a lien or charge for taxes, of record against his land, and it appears that all or some part of the tax charged is justly and equitably due from plaintiff, or chargeable upon the land, he must, as a condition of obtaining such relief, first pay or offer to pay the amount justly due, or he must be required to do so before the relief to which he shows himself entitled is given.' (Citing cases.) The principle has been applied to an action to enjoin a sale of land for delinquent assessments of an irrigation district organized under the Wright Act, in force prior to the enactment of the statute here involved."

█ It is further urged that the amendment of 1917 to section 3787 of the Political Code providing that irrigation district taxes shall be excepted from the absolute title to be conveyed by the sort of deed here in question, is unconstitutional. The only point raised in addition to those which have been frequently passed upon by our courts, in connection with irrigation district assessments, is the contention that if this amendment were allowed to stand it would give priority to irrigation assessments over state taxes, and thereby be in violation of article XIII, section 6, of the Constitution of California. No such priority is thus given. And no power of taxation has been thereby surrendered or suspended by any grant or contract. Any such powers as have been delegated to irrigation districts by the legislature may be at any time changed or withdrawn.

The respondent argues in reference to the two sorts of taxes here involved that a sale under one must of necessity extinguish the other. This does not necessarily follow, and we think that the legislature intended to protect the interests of each of these agencies of the state government. The question before us is not as to which party would get title if at the same time the land was sold to one for delinquent county taxes, and to another for delinquent irrigation district assessments. The only question here involved is as to whether one who has purchased land at a general tax sale takes the title thereto free from the lien of any irrigation district assessments which have theretofore been levied against it. This being entirely a matter of legislative enactment, under the statutes controlling in this case, we are of the opinion that he does not.

For the reasons given it follows that the portion of the interlocutory decree appealed from should be reversed, and it is so ordered.

Marks, Acting P. J., and Beaumont, J., *pro tem.,* concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 30, 1930, and a petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 7, 1930.