[Civ. No. 6388. Third Appellate District.—May 6, 1940.]

HOME OWNERS' LOAN CORPORATION (a Corporation), Respondent, v. AXEL HANSEN et al., Defendants; STATE OF CALIFORNIA, Appellant.

Earl Warren, Attorney-General, and James S. Howie, Deputy Attorney-General, for Appellant.

J. V. McDermott and Ewell D. Moore for Respondent.

THOMPSON, J.—This appeal raises the question as to the right of priority of lien in the State of California for unpaid sales taxes due and owing.

Respondent corporation filed an action in Los Angeles County for the foreclosure of a mortgage on real property situated therein. The State of California was made a party defendant because of the fact that the state had a judgment for $74.32 against Axel Hansen, the owner and mortgagor of the property, subject to the foreclosure suit. The judgment of foreclosure decreed that the real property therein described be sold and the proceeds of the sale applied to payment of the commissioner's fee, costs of suit and principal and interest in satisfaction of the mortgage debt. The foreclosure decree failed to recognize any lien or interest in behalf of the State of California in respect to the real property involved therein.

The note and mortgage to respondent corporation was executed on August 2, 1934, and the mortgage was recorded on October 5, 1934. A license or permit to engage in the sale of tangible personal property at retail was issued to the defendant, Axel Hansen, the mortgagor, by the board of equalization of the State of California for the period from July 1, 1934, to September 15, 1935. During this period there accrued and became due to the State of California a retail sales tax in the sum of $13.58. This sum, together with interest and a penalty which was imposed, amounts to $16.28. Other retail sales taxes due from Axel Hansen to the state accrued on retail sales made by him after September 15, 1935, and as to these latter taxes the state makes no claim of priority to respondent's lien of the mortgage. The Retail Sales Tax Act of 1933 (Stats. 1933, p. 2599; Deering's Supp. 1933, p. 2359, Act 8493) was amended in 1935 and the amendments became effective on September 15, 1935. Section 26½ was added to the act by the legislature in 1935. This section provides that the state does not have a preference over any recorded lien which attached prior to the date when the tax became a lien.

Appellant claims priority of lien as to said sum of $16.28, which accrued on sales made prior to September 15, 1935. It is contended that the state has a superior or prior lien against the property of the retailer, on the theory that any tax lien in California is *ex proprio vigore* superior to a private prior contract or mortgage lien. The 1935 amendments to the Retail Sales Tax Act of 1933 preclude the possibility of the application of the doctrine *ex proprio vigore* to property subject to a lien for taxes accruing on retail sales made after September 15, 1935. The act of 1933 is silent on the right of priority of lien. It is the silence of the statute in this regard which leads to the claim that the doctrine of *ex proprio vigore* applies as to tax liens. Consequently, appellant is claiming priority of lien against the property of the retailer for taxes accruing on retail sales of tangible personal property made only before the effective date of the 1935 amendments. We are concerned alone with the Retail Sales Tax Act of 1933, and this act becomes important in determining the question of priority of lien in the absence of a finding that California follows the rule that any tax lien is *ex proprio vigore* superior to a prior private contract or mortgage lien.

Considerable confusion has existed through various jurisdictions in determining the dignity to be granted to tax obligations. As early as 1800 the Supreme Court of South Carolina, in the case of *Butler* v. *Baily,* 2 Bay, 244, 249, held that a tax imposed upon persons was a lien on all the property of the person assessed, and superior to an earlier judgment lien, even though there was no statute purporting to create such lien, or any lien. Other jurisdictions adopted this rule of the Butler case, and held that taxes are *ex proprio vigore* a lien on all the property of the taxpayer. The importance of proper maintenance of the government and the necessity of expediting its functions were among the reasons given for the superiority granted to tax liens.

The case of *Dougherty* v. *Henarie,* 47 Cal. 9, decided in 1873, was perhaps the first authority in this state which might be deemed to state the rule of law that tax liens are *ex proprio vigore* superior to all other liens. The question was raised as to the superiority of a title acquired under a tax deed issued upon a sale for state and county taxes. The court held that the tax deed conveyed the title, discharged of the plaintiff's lien. At page 14 the court stated as follows:

"The general rule is that a sale and conveyance in due form, for taxes, extinguishes all prior liens, whether for taxes or otherwise. The necessity of collecting revenue for the support of the government imperatively requires that the lien for taxes shall take precedence over all other liens; and that a tax sale, followed by a proper conveyance, shall transfer the title discharged of prior tax liens."

The court was aided, however, in reaching its conclusion as to title under the tax deed by the presence of a section of the revenue law which provided that the tax deed conveyed to the grantee the absolute title to the lands described in the deed. In determining the effect of this section of the revenue law, the court said at page 15:

"More explicit and comprehensive language could not well have been employed to define the nature of the title which passes by the tax deed. . . . This language is so explicit as to require no interpretation and to leave no room for construction."

In *California Loan Co.* v. *Weis,* 118 Cal. 489 [50 Pac. 697], the question arose as to whether the lien of personal property

taxes was superior to the lien of a pre-existing mortgage which had attached to the land. The court held that the title of the purchaser under a sale of the land for delinquent personal property taxes was paramount to the lien of the mortgage. The decision in this instance was, however, based solely on the construction of the Political Code and it cannot be said that this case stands for the proposition that tax liens are *ex proprio vigore* superior to prior mortgage liens. The court said at page 493:

"It still remains to be considered, before leaving this branch of the case, whether the legislature of this State has, in the exercise of an unquestioned power, made the lien of its taxes paramount. As this matter, the power being conceded, *depends for its determination entirely upon statutory enactment*, adjudications in sister states will be of little value unless based upon identical laws." (Italics ours.)

In every case in which the question of the superiority of the tax lien has been in issue it will be noted that a construction of a statute has been involved. It is also true that the decisions, with the exception of the holding in the case of *O'Dea* v. *Mitchell*, 144 Cal. 374, 375, 381 [77 Pac. 1020], has, in the final analysis, depended upon the language used in the statutes applicable. It appears in a number of the decisions that language used with reference to the superiority of tax liens is nothing more nor less than a recognition of power in the legislature to make such tax liens paramount by the use of appropriate language to that effect. This conclusion is supported by an examination of those cases which disclose a discussion of the statutes immediately following the use of terms which might be deemed to indicate that California follows the rule that tax liens are *ex proprio vigore* superior to private liens. With the possible exception of the holding in the O'Dea case, *supra*, we conclude that the authorities cited by appellant do not uphold the proposition that tax liens are *ex proprio vigore* superior to private liens.

In concluding that California does not follow the rule announced by some decisions that tax liens are by their own force superior to private contract or mortgage liens, we quote from the opinion in *Guinn* v. *McReynolds*, 177 Cal. 230 [170 Pac. 421], and *Bolton* v. *Terra Bella Irr. Dist.*, 106 Cal. App. 313 [289 Pac. 678, 679]. In the Guinn case, decided in 1918, the court said at page 232:

"In dealing with tax or assessment liens, as with others, our decisions have recognized that the question of priority *is one of legislative intent.* Where, accordingly, the tax or assessment lien is preferred to an earlier contract lien, the basis of priority is found in the statute."

The Bolton case, decided in 1930, presented the question as to whether a tax deed taken under a sale for delinquent county taxes, passes title free from any lien for delinquent irrigation district taxes or assessments levied on the same land. The court stated that an assessment is not in all respects the same as a tax, but that it has many of the same qualities, and that as used in the Political Code, the word "taxes" includes assessments of irrigation districts, as well as general taxes. The court held that the purchaser of the land at the general tax sale did not take title free from the lien of the irrigation district assessments which had theretofore been levied against the land. In reaching this conclusion the court declared that priority of lien for unpaid taxes depended upon statutory enactment, and was a question of legislative intent. At page 319 the court quoted from the decision in the Guinn case, as follows:

"A lien for unpaid taxes or assessments is generally held to be superior to all contract liens, whether prior or subsequent in time. But the authorities declare, virtually without dissent, that even a tax lien is not entitled to rank ahead of a preexisting mortgage or other contract lien, unless the legislative enactment creating the tax lien has given it priority."

The decisions in both the Guinn and Bolton cases dispel any doubt as to whether California follows the rule of law that tax liens are *ex proprio vigore* superior to a pre-existing mortgage or other contract liens. These cases definitely hold that a paramount lien for unpaid taxes depends solely upon legislative enactment. We are of the opinion that these last-mentioned cases correctly state the law and that legislative intent is necessary for tax liens to take precedence over pre-existing mortgage or other contract liens. In *San Mateo County Bank* v. *Dupret,* 124 Cal. App. 395 [12 Pac. (2d) 669], decided in 1932, the court made the statement that tax liens were paramount to the rights created by mortgages and deeds of trust. However, in support of this proposition the court cited 18 California Jurisprudence, 132, sections 435, 436. Section 435 merely states the rule of law as decided by the

Guinn case, to the effect that it is within the power of the legislature to make the lien of taxes paramount to a mortgage or other contractual lien. The preceding language of the Dupret case, upon which the appellant in this action relies, was unnecessary to the determination of the issues therein, and it is not in accordance with the weight of authority.

■ Legislative intent being a prerequisite to the creation of priority of tax liens, it is our opinion the lien of appellant for unpaid sales taxes takes precedence over the lien of respondent's mortgage only if such priority is found to exist in the Retail Sales Tax Act of 1933. It is not denied that the legislature has power to make the lien of taxes paramount to mortgages or other contract liens. The superiority of the tax lien need not be declared in express terms. It is sufficient if the priority of such lien may be inferred from the provisions of the act.

■ The Retail Sales Tax Act of 1933 does not by express terms provide that the state shall have a prior or paramount lien for retail sales taxes due and owing as against the property of the retailer, and in our opinion the act of 1933 fails to disclose a legislative intent to create a priority in favor of such a tax lien. There is no language present in the act of 1933 which may be deemed to indicate an intention to create a preference in favor of the state. Section 26 of the act provides the procedure for the collection of delinquent sales taxes, but it is notably silent regarding the effect of the state's lien with relation to those of third parties who may have prior private liens on the property of the retailer. Section 26, paragraph 6, pursuant to the sale of the retailer's property by the board, fails to indicate that an absolute title is passed to the purchaser, but simply provides that: " . . . such bill of sale or deed shall vest the interest or title of the retailer in the purchaser." This language implies that vested interests of third parties may intervene.

The act of 1933 not only fails to disclose a legislative intent to create a prior lien in favor of the state, but prescribes the procedure under section 26 which must necessarily be followed in order to create a lien in any event. It is true that the first paragraph of section 26 provides that the board may file a notice of lien as against the retailer. It is asserted that the use of the word "may" precludes the necessity of filing such notice in order to obtain a lien. However, the use of the language following the provision for the filing of

such notice would appear to indicate the necessity of such action on the part of the board. The use of the word "may" is, in effect, mandatory, if the lien is to be created. This language provides as follows:

"From the time of filing any such notice the amount of the tax specified in such notice shall have the force and effect of the lien of a judgment against the retailer named in said notice of lien for the amount specified in such notice."

The language used clearly indicates that the lien of a judgment is not effective as against the retailer unless there has been a filing of notice of lien by the board.

Section 26, paragraph 4, provides for the sale by the board of property belonging to the retailer. This paragraph permits sale of the retailer's property in satisfaction of the delinquent taxes any time within two years of the delinquency. There is no particular restriction as to what property of the retailer may be seized by the board. Both personal and real property are subject to seizure. It is provided that only the property so seized shall be subject to the lien of the tax. The first paragraph of section 26 provides for the manner and means of obtaining the lien. The notice of lien may be filed in any county and thereby becomes as effective as a lien of a judgment in the particular county in which it is filed. The language used in the fourth paragraph of section 26 should be construed in connection with the first paragraph of that section.

A reasonable construction of section 26 leads to the conclusion that the legislature intended that the state should have a lien upon the property of a retailer only after filing notice of lien as provided for in paragraph 1 of that section. Consequently, although the notice of lien may be filed any time within two years of the delinquency of payment, the board is precluded from seizing or selling any property of the retailer until such notice has been filed in the county where the property is situated.

We conclude that California does not follow the rule of law that tax liens are by their own force superior to private contract or mortgage liens and that the Retail Sales Tax Act of 1933 fails to disclose a legislative intent to make retail sales tax liens paramount to existing contract or mortgage liens. It appears that the appellant failed to secure its lien against the property of the respondent in the manner provided by the

act since there was no notice of lien filed under paragraph 1 of section 26 of the act of 1933. The lien established by the procuring of a judgment for the delinquent sales taxes does not automatically give it preference over other prior contract or mortgage liens. The appellant's judgment for delinquent sales taxes is therefore subject to respondent's mortgage lien.

The judgment is affirmed.

Pullen, P. J., and Tuttle, J., concurred.