JEFFERSON STANDARD LIFE INSUR-
ANCE COMPANY, a Corporation,
Appellant,

v.

UNITED STATES of America, H. L. Byram, County Tax Collector of Los Angeles County, and George T. Goggin, Trustee of Stockholders Publishing Company, Inc., a Corporation, Bankrupt, Appellees.

No. 15349.

United States Court of Appeals
Ninth Circuit.

Aug. 21, 1957.

Rehearing Denied Sept. 25, 1957.

Meserve, Mumper & Hughes, Leo E. Anderson, Los Angeles, Cal., for appellant.

Charles K. Rice, Asst. Atty. Gen., A. F. Prescott, Karl Schmeidler, Attys., Washington, D. C., Laughlin E. Waters, U. S. Atty., Edward R. McHale, Asst. U. S. Atty., Andrew O. Porter, Deputy County Counsel, Harold W. Kennedy, County Counsel, Craig, Weller & Laugharn, Los Angeles, Cal., for appellees.

Before STEPHENS, Chief Judge, and DENMAN and POPE, Circuit Judges.

POPE, Circuit Judge.

This is an appeal from an order affirming the order of a referee in bankruptcy fixing and determining the respective rights and priorities of the appellant Jefferson Standard Life Insurance Company, the United States, and the Los Angeles County Tax Collector, in and to the proceeds of a trustee's sale of all the assets of Stockholders Publishing Company, Inc., the bankrupt.

On December 31, 1954, the date of the petition in bankruptcy, the three priority claimants mentioned had liens upon all of the property, real and personal, of the named bankrupt. The lien which first attached was that of Jefferson Standard. On the date of the bankruptcy there was owing to it $351,223.74 secured by deed of trust and chattel mortgage upon all of the bankrupt's property, which instruments were executed, filed and recorded December 1, 1945.

The lien next attaching was that of the United States for corporate income and excess profits taxes for the years 1943–44–45, with interest and penalties, in the sum of $288,608.58. This lien attached on March 14, 1952, when the local collector received the Commissioner's assessment list.

Third in order of time was the claim of Los Angeles County for real and personal property taxes for the year 1954–1955 which became a lien on the bankrupt's real estate on March 1, 1954. The amount owing on these taxes on the date of bankruptcy was $15,384.10.

In the course of the bankruptcy proceedings, the trustee, pursuant to authority granted him, sold all of the real and personal property assets of the bankrupt estate free and clear of all liens, such liens upon said property being transferred to the proceeds of sale without impairment. The proceeds of sale amounted to $382,500, and since the sum thus realized was insufficient to pay the three lien claimants in full. the trustee petitioned the referee for a determination of the nature, extent, amount, validity, priority and right to participate in the sales proceeds of the three lien claimants mentioned.

Upon hearing, the Referee held that the sum of $351,223.74 owing to Jefferson Standard upon its mortgage and deed of trust had priority over the claim and lien of the United States for taxes due it; and that the sum last mentioned should first be set aside for Jefferson Standard, the balance of the proceeds of the sale to be paid to the United States for application upon the taxes due it. However, it was ordered that from the sum of $351,223.74, thus set aside for Jefferson Standard, the sum of $15,384.10, the amount of the County's claim, should be paid to the County Tax Collector.

Here, upon appeal from the district court's affirmance of this order, Jefferson Standard makes two principal points: first, that the orders erred in giving priority to the County's lien; and second, that the Referee's order erroneously denied the appellant's claim for post-bankruptcy interest upon its indebtedness computed to the dates of payment.[1]

As between Jefferson Standard's prior mortgage lien and the Government's subsequent lien for taxes, it is conceded here that Jefferson Standard has priority. (Title 26 U.S.C.A. § 6323(a).)[2] The Referee's order that the amount owing to the County should be paid out of funds found due and tentatively set aside for Jefferson Standard was based upon his determination that "the lien of the County of Los Angeles, by California law, is superior to the lien of Jefferson." We are of the opinion that this is not a cor-

1. Appellant was paid $335,839.64 on September 1, 1955, during the pendency of the proceedings before the Referee. The $15,384.10 was held in the custody of the court pending the outcome of these proceedings.

2. "§ 6323(a) Invalidity of lien without notice.—Except as otherwise provided in subsection (c), the lien imposed by § 6321 shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the Secretary or his delegate— * * *."

rect statement of the California law, and that in consequence, the order directing payment of the county taxes out of sums which otherwise would be available for payment of the debt owing to Jefferson Standard must be reversed.

The Referee cited as authority for his version of the California law the cases of Dougherty v. Henarie, 47 Cal. 9, and Courtney v. Byram, 54 Cal.App.2d 769, 129 P.2d 721. Neither case is in point here. Although each case contains language which seems to suggest approval of a general rule that a tax lien in California is superior to a prior mortgage or other contract lien, neither of those cases involved any such question. Later California cases have completely negatived the suggestions made in the dicta in the cases relied on by the Referee. In the Dougherty case, the sole question presented was whether a tax deed issued upon a sale for state and county taxes conveyed a superior title free of the liens of a street assessment bond. The court's decision that the tax deed gave clear title was based upon the explicit language of a California statute which declared that a tax deed "shall convey to the grantee the absolute title to the lands described * * * free and clear of all incumbrances * * * whatever * * *." St.1859, p. 349. It will be noted that the language here quoted referred to the effect of a tax deed. It is true that by way of dictum the opinion of the court referred to "the necessity of collecting revenue for the support of the Government", and said that this "imperatively requires that the lien for taxes shall take precedence over all other liens". But it is well established that California does not go along with any such broad rule, sometimes recognized in other jurisdictions, that a lien for taxes is superior to all other liens, *ex proprio vigore*, even in the absence of a statute so declaring, or because of some principle that tax liens are liens of a "superior dignity".

In Home Owners' Loan Corporation v. Hansen, 38 Cal.App.2d 748, 102 P.2d 417, 419, the court reviewed the California cases, including the Dougherty case, and pointed out that later California decisions disclose that the dictum of the Dougherty case was not California law, saying (38 Cal.App.2d at page 420, 102 P.2d at page 420): "The decisions in both the Guinn and Bolton cases dispel any doubt as to whether California follows the rule of law that tax liens are ex proprio vigore superior to a pre-existing mortgage or other contract liens. These cases definitely hold that a paramount lien for unpaid taxes depends solely upon legislative enactment. We are of the opinion that these last-mentioned cases correctly state the law and that a specific expression of the legislative intent is necessary for tax liens to take precedence over pre-existing mortgage or other contract liens."

The Referee's opinion quotes from Courtney v. Byram, supra, a statement somewhat similar to that in the Dougherty case suggesting that the lien of taxes is superior to the obligations of private debts. The case involved no such question. In Fresno County v. Commodity Credit Corporation, 9 Cir., 112 F.2d 639, this court was presented with an argument that a California county's lien for unpaid taxes was superior to the prior lien of the Commodity Credit Corporation upon certain cotton situated in the county. The argument, similar to the dictum in the Courtney case, was that a tax obligation in California was entitled to priority in payment regardless of whether it had been given any such preference by statute. We there reviewed the California cases and rejected the argument that the California courts have adopted a "superior dignity" rule which would give a claim for taxes some inherent priority over ordinary obligations whether secured or unsecured, and whether they existed before or after the tax obligation arose. We there said (112 F.2d at page 641): "Whatever may have been said concerning the 'superior dignity' principle in earlier cases on liens on real property is overruled by the holding in Guinn v. McReynolds, 177 Cal. 230, 232, 170 P. 421, 422, where a real estate mortgage lien was held superior to a subsequently created tax lien on the same

property, not expressly made a first lien, for expenditures for eradication of disease and pests in orchards and elsewhere. * * * But the authorities declare, virtually without dissent, that even a tax lien is not entitled to rank ahead of a preexisting mortgage, or other contract lien, unless the legislative enactment creating the tax lien has given it priority."

■ It is thus apparent that contrary to the view taken by the Referee, the law in California is that "even a tax lien is not entitled to rank ahead of a pre-existing mortgage, or other contract lien, unless the legislative enactment creating the tax lien has given it priority." Smith v. Addiego, 54 Cal.App.2d 230, 129 P.2d 953, 957.

■ An examination of the California statutes readily discloses that there is no legislative enactment which gives Los Angeles County's claim for the taxes involved in this case any priority over Jefferson Standard's prior mortgage. As stated in the leading case of Guinn v. McReynolds, 177 Cal. 230, 170 P. 421, 422: "The general rule for fixing the relative rank of liens is declared by § 2897 of the Civil Code, which declares that: 'Other things being equal, different liens upon the same property have priority according to the time of their creation, except in cases of bottomry and respondentia.' This rule will govern unless, in any given case, the statute prescribes otherwise."

§ 3712 of the California Revenue and Taxation Code expressly provides that with respect to a sale of tax-deeded property by the Tax Collector, that "the deed conveys title to the purchaser free of all encumbrances of any kind existing before the sale", with certain exceptions not here relevant. That statute, it will be noted, has reference only to the effect of such tax deeds. The cases applying it are cited in Helvey v. Sax, 38 Cal.2d 21, 24, 237 P.2d 269, 271. There is no similar statute giving priority to liens such as that of Los Angeles County. It follows therefore that Jefferson Standard's mortgage has priority as provided in Civil Code § 2897, quoted in the Guinn case, supra. The court below was in error in affirming the Referee's order for payment to the Los Angeles County Tax Collector from funds which otherwise would have been payable to Jefferson Standard.

■ This brings us to the question of the right of the appellant to post-bankruptcy interest. The Referee and the trial court in denying appellant's claim for such interest relied upon this court's decision in Beecher v. Leavenworth State Bank, 9 Cir., 192 F.2d 10. This court has now held in Palo Alto Mutual Savings & Loan Ass'n v. Williams, 9 Cir., 245 F.2d 77, that a secured creditor in the position of Jefferson Standard is entitled to post-bankruptcy interest. While in the Palo Alto case such interest was allowed to the date of sale, the reasoning of that decision would require that in this case Jefferson Standard be allowed post-bankruptcy interest calculated to the dates of payment.

The order of the district court is reversed and the cause is remanded with directions to vacate the order of the Referee and to grant the prayer of the appellant's petition for review.