[Civ. No. 7937.   Third Dist.   May 16, 1951.]

ELNA B. SCHOHR et al., Appellants, v. M. C. POLK, as County Assessor, etc., et al., Respondents.

Minasian & Steadman for Appellants.

Raymond A. Leonard, District Attorney, and Charles H. Andrews, Deputy District Attorney, for Respondents.

PEEK, J.—This is an appeal from a judgment denying a petition for a writ of mandate to compel the assessor and auditor of Butte County to include within the Biggs Union High School District, for the purpose of assessing and computing taxes, that portion of Nelson Elementary School District

which was incorporated into the Durham Unified School District.

The pertinent facts concerning which there is no dispute are that prior to 1950 the Durham Union High School District and the Biggs Union High School District were adjoining districts located in Butte County. The southerly boundary of the Durham District was the northern boundary of the Biggs District. At that time the Nelson Elementary School District was entirely within the Biggs District. Some time prior thereto high school officials of said county met for the purpose of determining the line from which pupils could be reasonably transported to the north to the Durham and adjacent areas, and to the south to Biggs and its contiguous areas. This line ran through the Nelson District, placing the larger portion to the north thereof and the smaller portion to the south. Thereafter proceedings were instituted to form the Durham Unified School District, which district was to contain within its boundaries all of the elementary school districts formerly within the Durham Union High School District and the major portion of the Nelson Elementary School District. Said proceedings were instituted pursuant to chapter 16, division 2 of the Education Code, Statutes 1945, chapter 1273, as amended in 1947, Statutes 1947, chapter 501, and followed the plans and recommendations formulated by the Butte County local survey committee and approved by the State Commission on School Districts as provided in said chapter. No attempt was made in said proceedings to comply with the procedure set up in said code for the withdrawal of territory from a school district. (§§ 2921, 2922.) On December 6, 1949, a special election was called at which more than a majority of the voters cast their ballots in favor of such unification. On January 9, 1950, the Board of Supervisors of Butte County, being notified of the outcome of the election, adopted a "Resolution for Unification and Reorganization of School Districts in the Durham Union High School District to be known as Durham Unified School District."

It is the legality of that action by said board which is attacked by petitioners. They concede that respondents complied with the procedure for reorganization of school districts as outlined in chapter 16, division 2 of the Education Code but they contend that such proceedings were ineffective to sever the disputed three fourths of the Nelson Elementary School District from the Biggs Union High School District because no attempt was made to comply with the procedure

set up by the Education Code for the withdrawal of territory from a school district.

The title to said chapter 16, division 2 of said code, "Optional Reorganization of School Districts by Electors," leaves small room for doubt regarding the purpose and intent behind its adoption. It provides for an overall statewide plan for the reorganization of school districts. Provision is first made for the creation of local survey committees to study their respective areas and formulate plans and recommendations for the unification or other reorganization of school districts within such areas. (§§ 4901-4904.) Next the resulting plans and recommendations, if any, of these local committees are to be reviewed by the State Board of Education, and, if approved by that board, notice shall be given to the local supervisors, and after public hearings are had, the proposal shall be voted upon at a special election held in the district or districts affected. (§§ 4911-4912.) Furthermore, if the majority of the electors vote in favor of the plans and recommendations, the board of supervisors of the county in which the area is located are to cause an entry of that fact to be entered in the minutes and the reorganization shall be deemed accomplished. (§ 4919.)

Although counsel for appellants agree that the method set forth in said chapter provides for an "optional procedure for reorganization," they contend, nevertheless, that the withdrawal of the whole or portion of an elementary school district from a union high school district can be accomplished only by strict compliance with sections 2921, 2922 and 3691 of the Education Code. In support thereof they rely exclusively upon two cases, *Slater* v. *Kesey*, 102 Cal.App. 266 [282 P. 1021], and *Burger* v. *Hirni*, 50 Cal.App.2d 709 [123 P.2d 891], neither of which is in point since both were decided prior to the adoption of said chapter 16 in 1945.

Both of those cases involved proceedings—the Slater case dealt with the formation of a new elementary school district under what are now sections 2451 to 2461 of the Education Code, and the Burger case, annexation proceedings under what are now sections 4663 through 4665 of the Education Code—which proceedings in each case were held to be ineffective to accomplish the withdrawal of territory from a union district. The trial court in each case noted that under the statutory law as it then existed the sole means of withdrawal of territory from a union district was by strict adherence to

that procedure set forth in what are now sections 2921 and 2922 of the Education Code; that the sections involving formation and annexation of districts did not relate to the same subject as those involving withdrawal from districts. Neither the sections relating to formation nor those relating to annexation purported to deal with the comprehensive subject of overall reorganization as presently embraced by chapter 16 of division 2. Both the Slater and Burger cases were in their scope necessarily limited to the particular statutes involved, and because of the peculiarly distinct character of the legislation presented in this case, we conclude that those decisions are not here controlling.

In the present case it first should be noted that the title to chapter 16 states that it provides for the ''Optional Reorganization of School Districts by Electors.'' The commonly understood meaning of the word ''optional'' relates to the exercise of choice. See Webster's New Inter. Dict.) Thus, as used in said title it indicates that there are existing procedures for dealing with the general subject of reorganization, to which was added an alternative method. Secondly, ''reorganization'' is defined in the chapter (§ 4873) to mean the ''formation, annexation, uniting, unification, unionization, merger, division or change of boundaries of school districts authorized by this code.'' By defining ''reorganization'' so as to indicate division or change of boundaries of school districts, it is apparent that the Legislature has provided a means of severance of territory from a district additional to the procedures for exclusion and withdrawal of districts outlined in sections 3691 to 3694 and 2921 and 2922 of the Education Code.

Further indication of what the Legislature meant to include within the term ''reorganization'' is found in certain language of chapter 16 as revised in 1949. As amended, section 4912.2 now reads in part: ''That in the event the plans and recommendations of a county committee for an area provide for the exclusion of territory from a school district . . .'' Thereafter the section concludes with provisions as to the method of voting upon such plans and recommendations.

While a subsequent expression of the Legislature bearing upon the intent of a prior statute is not binding on the courts, such expression may be resorted to in determining the effect of a prior act. (*California Emp. Stab. Com.* v. *Payne*, 31 Cal.2d 210 [187 P.2d 702] ; *Board of Social Welfare* v. *County of Los Angeles*, 27 Cal.2d 90 [162 P.2d 635].)

Thus, when the subsequent legislation as set forth in said section 4912.2 is read together with the section 4873 definition of "reorganization," the conclusion is inescapable that the Legislature did in fact contemplate that reorganization proceedings under chapter 16 were to include the exclusion of territory from an already established district.

Appellants have lastly contended that the effect given chapter 16 of division 2 by the trial court amounts to a holding that chapter 16 is by implication a repeal of the other provisions of the Education Code governing severance of property from an existing high school district. ■ Since we have concluded that chapter 16 established a new and *additional* procedure for accomplishing the same results that may be accomplished under procedures set forth in the older sections of the Education Code, and that the later procedure is not intended to replace entirely the older procedures, but may be used in lieu thereof, it is clear that the several procedures are not irreconcilable, and no question of repeal by implication is involved. (See 23 Cal.Jur. 694.)

We conclude, therefore, that the proceedings herein attacked were effective to sever and did sever from the Biggs Union High School District that three fourths of the Nelson Elementary School District which appellants seek to have included within said high school district; and that the petition for a writ of mandate was properly denied by the trial court.

The judgment is affirmed.

Adams, P. J., and Van Dyke, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 12, 1951.