[Civ. No. 22546.    First Dist., Div. One.    Apr. 20, 1966.]

REDEVELOPMENT AGENCY OF THE CITY AND COUNTY OF SAN FRANCISCO, Plaintiff, v. PACIFIC VEGETABLE OIL CORPORATION, Defendant and Appellant; CITY AND COUNTY OF SAN FRANCISCO, Defendant and Respondent.

No appearance for Plaintiff.

Sheldon H. Wolfe and Allan, Miller, Groezinger, Keesling & Martin for Defendant and Appellant.

Thomas M. O'Connor, City Attorney, and Orville I. Wright, Deputy City Attorney, for Defendant and Respondent.

MOLINARI, Acting P. J.—This is an appeal by Pacific Vegetable Oil Corporation (hereinafter referred to as "Pacific") from the judgment of the trial court in a proceeding to apportion a condemnation award under Code of Civil Procedure section 1246.1, this judgment having adjudged that the funds on deposit from the condemnation of a certain parcel of real property be disbursed as follows: $19,501.38, plus interest, to the City and County of San Francisco (hereinafter referred to as the "City"); and the balance to Pacific. The sole issue presented on this appeal is whether the trial court correctly determined that the City's tax lien which it held on the condemned parcel is entitled to priority over Pacific's preexisting first mortgage lien on this property.

The pertinent facts, as stipulated by the parties, are as fol-

lows: Pacific is the holder of a valid and subsisting mortgage on the subject parcel, dated July 26, 1949 and recorded July 28, 1949, securing payment of the sum of $163,142.18, plus interest. This indebtedness has not been discharged and is still owing and unpaid. The City is a claimant to the award by virtue of the fact that real property taxes regularly assessed upon said parcel for the tax year 1955-1956 were not paid, so that this property was duly sold to the state for taxes on June 29, 1956. As of March 1, 1964 the duly levied and assessed real property taxes, delinquent penalty, costs, and redemption penalty, all unpaid and totalling $19,501.38, were secured by the real property taxation provisions of California law, particularly the Revenue and Taxation Code. As to both of these claims it was stipulated that the encumbrances upon which they were based were valid and subsisting liens which were viable and in effect at the time the subject parcel was condemned. It was further stipulated that the claims themselves were presently valid and subsisting claims against the funds which were deposited in escrow from the condemnation award.

It is established in California that in the absence of legislative enactment so indicating, tax and assessment liens have no priority over preexisting private contractor mortgage liens. (*Guinn* v. *McReynolds*, 177 Cal. 230, 232 [170 P. 421]; *Home Owners' Loan Corp.* v. *Hansen*, 38 Cal.App.2d 748, 753 [102 P.2d 417]; *Bolton* v. *Terra Bella Irr. Dist.*, 106 Cal.App. 313, 319 [289 P. 678]; *Jefferson Standard Life Ins. Co.* v. *United States*, 247 F.2d 777, 780; see also *California Loan & Trust Co.* v. *Weis*, 118 Cal. 489, 493 [50 P. 697].) Accordingly, legislative intent is necessary for tax liens to take precedence over preexisting mortgage or other contract liens. (*Guinn* v. *McReynolds, supra,* p. 232; *Home Owners' Loan Corp.* v. *Hansen, supra,* p. 753; *Bolton* v. *Terra Bella Irr. Dist., supra,* p. 319.

In *Weis* the holder of a sheriff's deed acquired in proceedings to foreclose his mortgage brought a quiet title action against a subsequent purchaser of the mortgaged property at a tax sale for delinquent personal property taxes. In holding that the tax title was superior to the lien of the mortgage, the Supreme Court, taking cognizance that the determination depended entirely upon statutory enactment, construed certain sections of the Political Code as making the lien for taxes paramount. Specifically, it was held that under section 3717 of the Political Code every tax due upon personal

property was a lien upon the real property of the owner thereof from and after "12 o'clock M." (p. 493), of the first Monday in March in each year, and that pursuant to sections 3716 and 3788[1] of that code such lien and the title which a purchaser received under a sale of the land for delinquent taxes were paramount to the lien of a mortgage which had attached to the land prior to the lien of such tax.

Subsequently, in *Guinn,* the Supreme Court was faced with the question of whether the statutory lien which the County of Tulare held on the property there in question as a result of the expenses which it incurred in eradicating insect pests and infectious diseases from that property was entitled to priority over the plaintiff's preexisting mortgage lien. The court, in determining that the county's lien was not entitled to priority, based its conclusion on the fact that section 2322a of the Political Code upon which the county's lien was based contained no provision indicating an intention on the part of the Legislature that this lien be given priority over earlier existing liens. The court reasoned that without such an express intention on the part of the Legislature, the provisions of Civil Code section 2897[2] as to rank of liens governed the question of priority. However, in setting forth this rule and giving examples of its application, the Supreme Court cited with approval the *Weis* case, stating that that case, based upon the expression of legislative intent found in Political Code sections 3716 and 3788, "held that the lien for . . . property taxes, imposed by our law upon the real property of the person assessed, was superior to pre-existing encumbrances upon the land." (P. 233.)

The principle announced in *Guinn* that the question of priority, even as between taxes or assessment liens, is one of legislative intent was applied in *Bolton,* decided in 1930, when the reviewing court was presented with the question as to

---

[1]Political Code sections 3716 and 3788, at that time, provided as follows: § 3716. "Every tax has the effect of a judgment against the person, and every lien created by this title has the force and effect of an execution duly levied against all property of the delinquent; the judgment is not satisfied nor the lien removed until the taxes are paid or the property sold for the payment thereof." § 3788. "The deed [from the sale of the property for the delinquent taxes] conveys to the grantee the absolute title to the land described therein . . . free of all encumbrances, except the lien for taxes which may have attached subsequent to the sale."

[2]Civil Code section 2897 provides now, as it did at the time of the *Guinn* case, that "Other things being equal, different liens upon the same property have priority according to the time of their creation. . . ."

whether a tax deed taken under a sale for delinquent county taxes passed title free from any lien for delinquent irrigation district taxes or assessments previously levied on the same land. After stating that the word "taxes" includes assessments of irrigation districts as well as general taxes, the court held that the purchaser of the land at the general tax sale did not take title free from the lien of the irrigation district assessments. This holding was predicated upon a determination that under Political Code section 3787 it was the legislative intent to make a tax deed from the county tax collector subject to irrigation district assessments.[3]

The rule of the *Guinn* case that, in the absence of a legislative enactment so indicating, tax and assessment liens have no priority over preexisting private contract or mortgage liens was even more emphatically reiterated in *Hansen*, decided in 1940. In that case the State of California, which was asserting that its lien for unpaid sales taxes due and owing from the defendant-retailer had priority over the plaintiff's preexisting mortgage lien on property owned by the retailer, based its contention on the theory that any tax lien in California is *ex proprio vigore* superior to a private prior contract or mortgage lien. In concluding that this theory is not followed in California and that legislative intent is a prerequisite to the creation of priority of tax liens, the appellate court relied in part on the *Weis* and *Guinn* cases. In its discussion of the *Weis* case, the court stated its holding, quoted pertinent language from the opinion and commented that the decision in that case was "based solely on the construction of the Political Code and it cannot be said that this case stands for the proposition that tax liens are *ex proprio vigore* superior to prior mortgage liens." (P. 752.)

In 1957 the Ninth Circuit Court of Appeals decided *Jefferson Standard*. In that case the court was confronted with the issue of the relative priorities, under California law, of Los Angeles County's tax lien and Jefferson Standard's preexisting mortgage lien, each claimant claiming priority to the funds in the bankrupt's estate. In determining that Jefferson Standard's mortgage lien had priority, the court, relying in

---

[3]Political Code section 3787, as it then read, provided, in pertinent part, that a deed to the state for delinquent taxes conveyed absolute title to the property described therein, "free of all encumbrances, except any lien of taxes levied for . . . irrigation district purposes. . . ." This section was construed by the *Bolton* case to refer also to the purchaser at a delinquent tax sale.

part on *Hansen* and *Guinn,* first concluded that it is settled law in California that a tax lien is not entitled to rank ahead of a preexisting mortgage lien unless the legislative enactment creating the tax lien has provided for such priority. The opinion then continues as follows: "An examination of the California statutes readily discloses that there is no legislative enactment which gives Los Angeles County's claim for the taxes involved in this case any priority over Jefferson Standard's prior mortgage. . . . § 3712 of the California Revenue and Taxation Code expressly provides that with respect to a sale of tax-deeded property by the Tax Collector, that 'the deed conveys title to the purchaser free of all encumbrances of any kind existing before the sale', with certain exceptions not here revelant. That statute, it will be noted, has reference only to the effect of such tax deeds. . . . There is no similar statute giving priority to liens such as that of Los Angeles County. It follows therefore that Jefferson Standard's mortgage has priority as provided in Civil Code § 2897. . . ." (P. 780.)

In 1959 the California Legislature enacted section 2192.1 of the Revenue and Taxation Code. This section provides as follows: "Every tax declared in this chapter to be a lien on real property, every public improvement assessment declared by law to be a lien on real property, and the lien of taxes and assessments upon real property of all taxing agencies as set forth in Section 3900 of this code, have priority over all other liens on the real property, regardless of the time of their creation." In addition, section 2 of the enactment provides that "It is the intent of the Legislature that Section 2192.1 of the Revenue and Taxation Code be declaratory of the existing law and it is not intended nor shall it be construed as effecting any change thereof. It is enacted to avoid the interpretation of the federal case of *Jefferson Standard Life Ins. Co.* v. *United States,* 247 F.2d 777, that the existing law, as generally recognized for many years and as set forth in California cases, including *California Loan & Trust Co.* v. *Weis,* 118 Cal. 489 [50 P. 697], has been changed from that which is declared herein."

In the light of the foregoing it is apparent that the question before us is whether, at the time Pacific took its mortgage on the subject property, the California Legislature had expressed its intent that a tax lien have priority over a preexisting mortgage lien. ▮ Clearly by its enactment of Revenue and

Taxation Code section 2192.1,[4] the Legislature has given expression to its intent that tax liens be afforded priority over private liens. However, Pacific argues that this statute cannot govern the disposition of the instant case since its mortgage lien was created prior to the enactment of section 2192.1. Accordingly, Pacific asserts that this section cannot be given retroactive effect.

It is obvious that section 2192.1 was enacted to obviate any implication created by the *Jefferson Standard* case as to the intent of the California Legislature with respect to the priority of tax liens. ■ We are satisfied that this statute is not the enactment of an express provision declaring the superiority of tax liens for future cases only; rather it is a statute declaratory of the intent of prior legislation. ■ Statutes which are declaratory of the meaning of previously enacted legislation, while not binding on the courts, may be properly considered in determining the meaning and effect, of the earlier enactment. (*Board of Social Welfare* v. *County of Los Angeles,* 27 Cal.2d 90, 97 [162 P.2d 635] ; *Stockton Sav. & Loan Bank* v. *Massanet,* 18 Cal.2d 200, 204 [114 P.2d 592] ; *Schohr* v. *Polk,* 104 Cal.App.2d 233, 236-237 [231 P.2d 164] ; see *Clayton* v. *Schultz,* 4 Cal.2d 425, 430 [50 P.2d 446] ; 36 Cal.L.Rev. 634, 635-636.) ''That is not giving a retroactive, effect to a statute, because the meaning of the statute to be interpreted has always been the same. The subsequent legislation interpreting the statute construed, does not change the meaning; it merely supplies an indication of the legislative intent which may be considered together with other factors in arriving at the true intent existing at the time the legislation was enacted.'' (*Stockton Sav. & Loan Bank* v. *Massanet, supra,* p. 204.)

In providing in its enactment of section 2192.1 that ''It is the intent of the Legislature that . . . [this statute] be declaratory of the existing law,'' the Legislature not only indicated the intended meaning of its prior enactments dealing with the priority of tax liens but it expressly reaffirmed the interpretation placed upon such prior enactments by the Supreme Court in *Weis.* As already pointed out, *Weis* held that former sections 3716 and 3788 of the Political· Code were intended by the Legislature to establish the priority of tax liens. The provisions of these statutes upon which *Weis* relied

---

[4]Unless otherwise indicated, all statutory references hereafter are to the Revenue and Taxation Code.

in finding a priority for tax liens are now contained, substantially unchanged, in Revenue and Taxation Code sections 2194 and 3712, enacted in 1939.[5]

We are of the opinion, moreover, that notwithstanding the provisions of section 2192.1 the determination of the instant case is governed by the Supreme Court's opinion in the *Weis* case. As we noted, *Weis* determined that, based upon the expression of the Legislature in former Political Code sections 3716 and 3788, "the laws of our state put all tax liens upon an equality and make each and all superior to any other charge upon the land." (P. 495.) We are not persuaded by *Jefferson Standard's* interpretation of the effect of section 3712, namely, that it refers only to the effect of tax deeds and not to the priority of tax liens. As we have already pointed out the relevant provisions of former Political Code sections 3716 and 3788, which the Supreme Court in *Weis* held made tax liens "paramount to other liens, and under sale for their enforcement gives to the purchaser a title free and unencumbered" (p. 494), have been substantially carried into sections 2194 and 3712 of the Revenue and Taxation Code, which were in effect at the time Pacific's mortgage lien was created. We are required to follow the decisions of the California Supreme Court (*Auto Equity Sales, Inc.* v. *Superior Court,* 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]), but not the decisions of federal courts in matters of state law (*Silman* v. *Reghetti,* 7 Cal.App.2d 726, 729 [47 P.2d 291]; *People* v. *Herbert's of Los Angeles, Inc.,* 3 Cal.App.2d 482, 484 [39 P.2d 829]; *Estate of Sloan,* 222 Cal.App.2d 283, 293 [35 Cal.Rptr. 167]).

Pacific urges that *Weis* is distinguishable from the instant case in several particulars. It asserts that "*Weis* was a quiet title action to have a tax lien and deed removed, whereas the

[5]These statutes provide as follows:

§ 2194. "Except as otherwise provided in this chapter, the judgment is satisfied and the lien removed when, but not before, (a) the tax is paid or legally canceled, or, (b) for nonpayment of any taxes, the property is sold to a private purchaser or deeded to the State."

§ 3712. "The deed [from tax collector to purchaser] conveys title to the purchaser free of all encumbrances of any kind existing before the sale, except: [specified taxes or liens for special assessments, and certain easements, water rights and restrictions of record]."

The remaining provisions of former Political Code section 3716 are now contained in Revenue and Taxation Code sections 2186 and 2193, which provide as follows:

§ 2186. "Every tax has the effect of a judgment against the person."

§ 2193. "Every lien created by this division has the effect of an execution duly levied against the property subject to the lien."

purpose of the instant case is simply to determine the order of payment from an existing fund.'' We do not find this distinction meaningful; nor has Pacific indicated why such factual distinction between *Weis* and the instant case makes the principles enunciated in the former inapplicable here. As to the contention that *Weis* is based on the doctrine that tax liens are *ex proprio vigore* superior to private liens, which doctrine is now repudiated in California, we do not agree. As expressly noted in *Hansen,* the decision in *Weis* is based ''solely on the construction of the Political Code and it cannot be said that this case stands for the proposition that tax liens are *ex proprio vigore* superior to prior mortgage liens.'' (P. 752; see also *Guinn* v. *McReynolds, supra,* 177 Cal. 230, 232.) Pacific also contends that *Weis* should not be considered by this court because it relied heavily on the case of *Eaton's Appeal,* 83 Pa. 152, which is factually distinguishable from both *Weis* and the instant case in that it involved a judgment lien rather than a prior mortgage lien. In the first place, we do not read *Weis* as placing heavy reliance on *Eaton's Appeal.* Rather we note the language from *Weis* to the effect that the issue before it depends for its resolution upon statutory enactment and ''adjudications in sister states will be of little value unless based upon identical laws.'' (P. 493.) Moreover, *Weis,* in discussing *Eaton's Appeal,* was not concerned with the facts in that case but only with the Pennsylvania statute which contained similar provisions to those found in California's then existing Political Code section 3716.

Pacific argues that neither section 2194 nor section 3712 can be considered by this court as furnishing the requisite legislative intent that tax liens be given priority. As to section 2194 Pacific argues that it was not enacted for the purpose of giving priority to tax liens. It is reasonable to assume that the Legislature may have had such a purpose in mind when it enacted this section in view of language contained in section 2192.1, subsequently enacted. In any event the decision in the *Weis* case requires a holding by us that section 2194 contains the requisite legislative intent that tax liens be afforded priority. With regard to section 3712 Pacific urges that it cannot be considered to grant priority to tax liens ''since it is not within the statutory enactment creating the lien, as required by *Guinn.* . . .'' In response to this contention we note that *Guinn* does not make it a requirement for the priority of tax liens that this priority be contained ''within the statutory

enactment creating the lien.'' Rather both *Guinn* and *Hansen* require that the intent be expressed *by legislative enactment.* Moreover, both of these cases, while enunciating the rule that legislative enactment is required for the priority of tax liens, discuss with approval and quote from the *Weis* case, which based its determination that tax liens were afforded priority partly upon the forerunner to section 3712. Finally, Pacific argues that the *Weis* case is not controlling in the instant case because *Weis* involved a tax deed rather than a tax lien. While factually speaking, Pacific is correct in this assertion, nevertheless the issue in *Weis* was framed in terms of the priority of a tax lien and the entire discussion of the Supreme Court in that opinion concerned tax liens rather than tax deeds. Moreover, the *Weis* case has been subsequently cited by both the Supreme Court and District Courts of Appeal as standing for the principle that tax liens are, by statutory enactment in California, afforded priority over private contract or mortgage liens. (*Guinn* v. *McReynolds, supra,* pp. 232-233; *Home Owners' Loan Corp.* v. *Hansen, supra,* pp. 751-752; *Chase* v. *Trout,* 146 Cal. 350, 365 [80 P. 81].) Accordingly, we conclude that the holding in *Weis,* by which we are bound, related to tax liens and not to tax deeds.

It is our conclusion, therefore, that the *Weis* case stands for the principle that, by virtue of legislative enactment (the forerunners to §§ 2194 and 3712), tax liens are given priority in California over private contract or mortgage liens; that this court is bound by the holding in that case notwithstanding the decision in *Jefferson Standard*; and that the trial court correctly determined that the City's lien for unpaid property taxes was entitled to priority over Pacific's mortgage lien out of the proceeds from the condemnation award being held in escrow.

The judgment is affirmed.

Sims, J., and Bray, J.,* concurred.

---

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.