[Civ. No. 20316. Third Dist. Oct. 6, 1981.]

COUNTY OF BUTTE, Plaintiff, v.
NORTH BURBANK PUBLIC UTILITY DISTRICT, Defendant and
Appellant;
R. C. ROBERTS et al., Interveners and Respondents.

COUNSEL

Minasian, Minasian, Minasian, Spruance & Baber and M. Anthony Soares for Defendant and Appellant.

Blade & LeClerc, Robert V. Blade and Raoul J. LeClerc for Interveners and Respondents.

OPINION

PUGLIA, P. J.—Are delinquent sewage service charges in all cases a lien upon the real property upon which the service was used? Under the circumstances of this case, the trial court held they were not. We affirm.

Defendant, North Burbank Public Utility District (District), is a public utility district formed pursuant to Public Utilities Code section 15501 et seq. Located within the District boundaries is a mobilehome park known as the Oaks at Lake Oroville (Oaks), which the District provides with sewage service.

The Oaks became delinquent in sewage service charges incurred from March through June 1978. On or about July 1, 1978, District, pursuant to Public Utilities Code section 16469, notified the County of Butte to add to the assessment roll unpaid charges in the amount of $3,136.

These charges were added to the District taxes and included in the tax bill for 1978-1979. By June 30, 1979, the delinquent service charges accrued to the Oaks had increased by an additional $17,046. These charges were ordered to be added to the tax bill for 1979-1980. On August 2, 1979, District caused a "Notice of Delinquent Charges, Taxes and Services" to be recorded.

In a letter dated August 6, 1979, the District threatened to terminate service to the Oaks because of the unpaid service charges. On August 8, 1979, plaintiff, County of Butte, sought an injunction to prevent District from discontinuing sewer service. On August 14, 1979, respondents (hereafter collectively referred to as Roberts), intervened in the county's action, seeking (1) to quiet their title in the Oaks as against the District, and (2) to declare void the delinquent service charges as they appear on the secured tax rolls.

Roberts' interest in the action came about as follows. On June 10, 1974, title to the Oaks was vested in "The Oaks at Lake Oroville, Ltd.," a limited partnership. On that same date, the partnership encumbered the property with a deed of trust in favor of Central California Federal Savings & Loan Association, to secure an indebtedness of $550,000. Apparently, sometime between 1974 and 1979, the partnership became delinquent in payments on the deed of trust. On August 8, 1979, a trustee's sale was conducted and the deed of trust foreclosed. On that same date, the purchaser at the trustee's sale conveyed the property to Roberts. It was then that Roberts intervened in the present action.

Trial was held after which the court ruled in favor of Roberts, granting the relief sought in the complaint in intervention.

### DISCUSSION

■ A trustee's deed conveys absolute title to the purchaser as against all subordinate claims, but not as to claims entitled to priority. (*Hohn* v. *Riverside County Flood Control etc. Dist.* (1964) 228 Cal. App.2d 605, 612-613 [39 Cal.Rptr. 647]; *Brown* v. *Copp* (1951) 105 Cal.App.2d 1, 6 [232 P.2d 868].) In the absence of a legislative enactment to the contrary, a statutory lien is not entitled to priority over a preexisting contract lien. (*Redevelopment Agency* v. *Pacific Vegetable Oil Corp.* (1966) 241 Cal.App.2d 606, 608 [50 Cal.Rptr. 676]; see 3 Witkin, Summary of Cal. Law (8th ed. 1973) Security Transactions in Real Property, § 38, pp. 1523-1524.)

In 1959, the Legislature enacted section 2192.1 of the Revenue and Taxation Code. This section provides: "Every tax declared in this chapter to be a lien on real property, every public improvement assessment declared by law to be a lien on real property, and the lien of taxes and assessments upon real property of all taxing agencies as set forth in Section 3900 of this code, have priority over all other liens on the real property, regardless of the time of their creation."[1]

■ The District asserts that a service charge which has been made a lien upon real property is, or may be considered to be, a real property tax or a public improvement assessment within the meaning of Revenue and Taxation Code section 2192.1, and is thus entitled to priority over a preexisting encumbrance of record. We disagree.

The answer to the District's assertion is provided in Public Utilities Code sections 16469 and 16470. (Hereafter, all statutory references are to sections of the Public Utilities Code unless otherwise indicated.) Section 16469 provides in pertinent part: "Charges unpaid at the time specified for the fixing of the rate of taxes may be added to *and become part of* the annual assessment levied upon the land upon which the commodity or service was used, . . ." (Italics added.) The annual assessment referred to in section 16469 is the District tax computed and entered on the assessment rolls. (See §§ 16648, 16651-16653.) Thus, at least for purposes of providing the mechanics for collecting delinquent service charges, the Legislature has declared that said unpaid charges are to be treated as District taxes. (§ 16654.)

Notwithstanding this fact, the Legislature has declared that unpaid service charges are not in all cases a lien upon the real property served and entitled as such to priority over a preexisting mortgage lien. This conclusion is mandated by the provisions of section 16470: "*Charges added to an assessment are a lien on the land, except* that if any real property to which such lien would attach has been transferred or conveyed to a bona fide purchaser for value, or *if a lien of a bona fide encumbrancer for value has been created and attaches thereon, prior to the date for which the first installment of such charges would become delinquent, then the lien which would otherwise be imposed by this section shall not attach to such property, . . .*" (Italics added.)

---

[1]Although Revenue and Taxation Code section 3900 was repealed in 1979, the district's status as a taxing agency within the meaning of Revenue and Taxation Code section 2192.1 is not seriously questioned by the parties. (See Rev. & Tax. Code, § 121; Pub. Util. Code, § 16641.)

Here, a lien of a bona fide encumbrancer for value was created when, in 1974, the Oaks encumbered said property with a deed of trust in favor of Central California Federal Savings & Loan Association. Because of this bona fide encumbrance, the lien otherwise created by section 16470 did not attach to the property. Thus, Roberts' acquisition from the purchaser at the foreclosure sale was free and clear of liability for accrued service charge delinquencies.

The District is not without a remedy in this situation. Section 16470 provides that when such a lien cannot attach to the land, the District shall proceed to file a certificate with any county recorder, which thereafter becomes a lien upon all other property owned in the county by the person who failed to pay said delinquent charges.[2]

Because there existed on the property in question prior to the service charge delinquencies a bona fide encumbrance for value, section 16470 precluded the lien created for delinquent service charges from attaching to the property served. The District's remedy is against the previous record owner of the property, not against the property or Roberts.

The judgment is affirmed.

Blease, J., and Carr, J., concurred.

---

[2]Section 16470 continues: "... the district shall within three years after the amount is due file for record in the office of any county recorder a certificate specifying the amount, interest, and penalty due, the name and address as it appears on the records of the district of the person liable for the same, and the fact that the district has complied with all provisions of this part in the determination of the amount required to be paid. From the time of recordation of the certificate, the amount required to be paid together with interest and penalty constitutes a lien upon all real property in the county owned by the person or afterwards and before the lien expires acquired by him. The lien has the force, effect, and priority of a judgment lien and shall continue for 10 years from the time of the filing of the certificate unless sooner released or otherwise discharged. The lien may, within 10 years from the date of the filing of the certificate or within 10 years from the date of the last extension of the lien in the manner herein provided, be extended by filing for record a new certificate in the office of the county recorder of any county and from the time of such filing the lien shall be extended to the real property in such county for 10 years unless sooner released or otherwise discharged."