Filed 6/12/14  Tharp Family Ltd. Partnership v. County of Tulare CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THARP FAMILY LIMITED PARTNERSHIP, Plaintiff and Appellant, v. COUNTY OF TULARE, Defendant and Respondent. | F066231 (Super. Ct. No. VCU247734) OPINION |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Melinda M. Reed, Judge.

Law Offices of Robert Krase, Robert Krase; Dowling Aaron Incorporated, Stephanie Hamilton Borchers for Plaintiff and Appellant.

Kathleen Bales-Lange, County Counsel, Julia Langley, Deputy County Counsel for Defendant and Respondent.

-ooOoo-

E.M. Tharp, Inc., the predecessor of plaintiff Tharp Family Limited Partnership (Tharp), acquired a security interest in a parcel of real property in Tulare County in 1988. Tharp's loan to the owner matured in 1993 and was never repaid.  Tharp took no action. Years later, a nuisance arose on the property.  The County of Tulare (county) abated the

nuisance and recorded a notice of assessment of abatement costs against the property on August 14, 2007. Later the same month, Tharp recorded a notice of default on its 1988 loan. A foreclosure sale was completed and Tharp took title to the property in December 2007.

Tharp informed the county of its view that the security interest upon which it had foreclosed was superior to the county's interest based on the recorded notice of assessment. The county disagreed. Tharp brought this action requesting declaratory judgment and other remedies. The trial court dismissed the action after sustaining the county's demurrer without leave to amend. Tharp appeals.

We will affirm the judgment for two reasons: First, Tharp's security interest expired in 2003, 10 years after its loan matured. Consequently, it had no interest in the property at the time the county asserted its interest based on the unpaid assessment. This issue was not raised in the trial court, but we have discretion to consider it and we do so. Second, by statute, the county's recorded notice of assessment was a "special" assessment lien—equivalent to a tax lien—and therefore would have priority even if Tharp's security interest still existed. Tharp's argument that its interest is superior because it is a bona fide encumbrancer for value is without merit.

## *FACTS AND PROCEDURAL HISTORY*

The essential facts are undisputed. According to the complaint, E.M. Tharp, Inc., loaned $425,000 to Anthony and Helen Landeros in 1988. To secure the loan, E.M. Tharp, Inc., became beneficiary and trustee on a deed of trust to the Landeroses' property in Tulare County. The loan was to become due on April 15, 1993.

The Landeroses operated a business on the property called Landeros Wood Recycling Facility. On March 16, 2004, the county issued the Landeroses a notice to abate code violations. On July 19, 2004, the county issued a notice of violation, stating that the Landeroses had failed to correct the violations. The notices listed three violations: (1) construction of a building without a permit; (2) accumulation of solid

2.

waste; and (3) violation of the terms of a conditional use permit. The notice informed the Landeroses of their right to a hearing. A hearing took place on August 18, 2004, after which the hearing officer declared the condition of the property to be a public nuisance.

The county filed an action on behalf of the People against the Landeroses in superior court in November 2005. This led to a mediation in September 2006, after which the parties signed an agreement stating that the matter would be deemed resolved if the Landeroses would "rake clean by 11/15/06 noon the subject property." The deadline was extended to January 19, 2007, but the Landeroses failed to clean up the property.

In March 2007, the Landeroses and the county entered into another settlement agreement under which the county would abate the nuisance at the Landeroses' expense. The agreement stated: "Costs of the abatement shall be a lien against the property and shall be placed on the tax roll."

The abatement work was completed on May 18, 2007. The abatement cost incurred by the county was $160,479.42. The county assessed this amount in a Notice and Statement of Decision and Order to Abate and Assessment of Abatement Cost executed on August 9, 2007. The notice stated: "The cost shall be placed as a lien on the property until such time as [it is] paid in full to the County of Tulare Resource Management Agency. This cost shall also be added to the tax rolls for this property." The county recorded this document against the property on August 14, 2007.

Later the same month, E.M. Tharp, Inc., assigned the deed of trust to Tharp. Tharp recorded a Notice of Default on August 21, 2007, one week after the county recorded the notice of assessment. A trustee's sale was completed and title was conveyed to Tharp on December 19, 2007. A trustee's deed reflecting this transaction was recorded on December 26, 2007.

On December 13, 2007, shortly before the trustee's sale was completed, Tharp sent the county a letter by counsel stating its opinion that the abatement costs "are not

3.

taxes, they are contractual in nature and, therefore, will not receive priority lien status as property taxes," but instead "will receive the same treatment on foreclosure as any other junior statutory or contractual lienholder." The county did not respond to the letter.

On September 1, 2011, the county published in a local newspaper a notice that there was a delinquent assessment on the property. Tharp read the notice and asked the county for its position. A deputy tax collector replied by e-mail that her office believed the charge for the abatement costs was associated with the property and Tharp, as the current owner, was responsible for it. The total amount owed, including penalties and interest, stood at $272,680.31 as of September 30, 2011.

Tharp submitted a claim to the county pursuant to the Government Claims Act (Gov. Code, § 810 et seq.) on September 21, 2011. The claim requested the county to release its lien on the property and contended that its failure to do so constituted slander of title.

Tharp filed the present lawsuit, titled "Verified Petition for Writ of Mandate, and Complaint for Declaratory Relief, Inverse Condemnation, and Deprivation of Civil Rights," against the county on June 21, 2012. It alleged four causes of action: (1) a petition for writ of mandate compelling the county to release Tharp from any responsibility for the abatement costs on the grounds that those costs could be the basis only of an unsecured debt or a junior lien; (2) a request for declaratory judgment on the same grounds; (3) an inverse condemnation claim, i.e., a contention that the recording of the lien constituted a condemnation of the property for which Tharp was entitled to compensation; and (4) a claim pursuant to 42 U.S.C. section 1983 that the recording of the lien without prior notice to Tharp violated Tharp's rights to procedural due process, substantive due process, and equal protection of the laws under the United States Constitution.

The county filed a demurrer. The trial court sustained it in a written order, stating in part as follows:

4.

"Petitioner essentially contends he is entitled to relief under Government Code section 25845(d) and (f) because petitioner is a bona fide purchaser or encumbrancer for value. The court disagrees.

"The facts show, and petitioner asserts, that it or its predecessor held a recorded deed of trust against the subject property from 1988 until petitioner completed a non-judicial foreclosure and acquired ownership of the property in December of 2007. Prior to petitioner's acquisition of title in December 2007, the County completed abatement proceedings regarding a public nuisance on the property and recorded its notice of Assessment of Abatement Costs. Thus, petitioner was not a bona fide purchaser or encumbrancer because it did not originally acquire an interest in the property subject to County's lien, nor did it acquire ownership upon foreclosure without notice of the County's recorded assessment lien.

"Further, under section 25845(d), because the owner failed to pay the abatement costs, the County was entitled to order the costs of abatement against the property and apply all laws applicable to the enforcement of county taxes to the special assessment. Section 25845 does not state that deed of trust holders are entitled to notice of abatement proceedings in addition to that provided by the recorded assessment and petitioner does not cite any persuasive authority to the contrary.

"Thus, as a matter of law, petitioner fails to state sufficient facts to compel the issuance of a writ or for monetary damages. Since petitioner also fails to show any reasonable possibility for curing the defects in its writ/complaint, the demurrer is sustained without leave to amend."

## *DISCUSSION*

### I.   *Standard of review*

Tharp argues that the demurrer should have been overruled. The standard of review is well established:

"In an appeal from a judgment dismissing an action after a general demurrer is sustained without leave to amend, our Supreme Court has imposed the following standard of review. 'The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed "if any one of the several grounds of demurrer is well taken. [Citations.]" [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a

5.

cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]' [Citations.]." (*Genesis Environmental Services v. San Joaquin Valley Unified Air Pollution Control Dist.* (2003) 113 Cal.App.4th 597, 603.)

## II. *Tharp's security interest had expired*

As a threshold matter, we hold that Tharp no longer had any security interest in the property when the county recorded its lien. This conclusion defeats all of Tharp's causes of action, as all are based on a claimed deprivation of that security interest.

Civil Code section 882.020, enacted in 1982, sets an outer time limit for the enforcement of deeds of trust and mortgages even when the general statute of limitations might have been extended. (See Recommendation Relating to Marketable Title of Real Property (Nov. 1981) 16 Cal. Law Revision Com. Rep. (1982) 401, 437.) The statute provides:

> "(a)    Unless the lien of a mortgage, deed of trust, or other instrument that creates a security interest of record in real property to secure a debt or other obligation has earlier expired pursuant to Section 2911, the lien expires at, and is not enforceable by action for foreclosure commenced, power of sale exercised, or any other means asserted after, the later of the following times:

> "(1)    If the final maturity date or the last date fixed for payment of the debt or performance of the obligation is ascertainable from the recorded evidence of indebtedness, 10 years after that date.

> "(2)    If the final maturity date or the last date fixed for payment of the debt or performance of the obligation is not ascertainable from the recorded evidence of indebtedness, or if there is no final maturity date or last date fixed for payment of the debt or performance of the obligation, 60 years after the date the instrument that created the security interest was recorded.

> "(3)    If a notice of intent to preserve the security interest is recorded within the time prescribed in paragraph (1) or (2), 10 years after the date the notice is recorded." (Civ. Code, § 882.020.)

In other words, the security interest expires 10 years after the due date of the last payment if that date is ascertainable from the recorded documents, and 60 years after recordation if that date is not ascertainable. (The "later of" language might be thought to introduce some uncertainty about when the 10-year limit applies, but the Law Revision Commission's comment makes clear that the maximum enforcement period is 10 years from maturity if the maturity date is ascertainable and 60 years from recordation if not. (See Recommendation Relating to Marketable Title of Real Property, *supra*, at p. 438.) To waive or extend the time limit, it is necessary to prepare and record a written waiver or extension before the time expires. (Civ. Code, § 882.020, subd. (c).)

The Law Revision Commission explained that this statute allows the maximum life of a deed of trust to be determined from the recorded documents alone:

> "Section 882.020 prescribes a maximum time for enforcement of a mortgage or deed of trust. It operates to bar enforcement of a mortgage or deed of trust after the time prescribed even though the general statutes of limitation may not have run due to tolling, partial payment, or waiver.… [¶] … The effect of subdivision (a) is to prescribe a maximum life for a mortgage or deed of trust based exclusively on the record for marketability of title purposes." (Recommendation Relating to Marketable Title of Real Property, *supra*, at pp. 437-438.)

The new law was necessitated by the possibility under former law that an "encumbrance will burden the property indefinitely," giving rise to difficulties with the marketability and insurability of title. This problem was the result of a court-made "rule that the power of sale under a deed of trust 'never outlaws.' See, *e.g.*, 3 B. Witkin, Summary of California Law, Security Transactions in Real Property §§ 84-85 (8th ed. 1973).)" (Recommendation Relating to Marketable Title of Real Property, *supra*, at p. 409 & fn. 11.)

The effect of the expiration of time is that the security interest can no longer be enforced in any way:

> "Expiration of the lien of a mortgage, deed of trust, or other security interest pursuant to this chapter or any other statute renders the lien

unenforceable by any means commenced or asserted thereafter and is equivalent for all purposes to a certificate of satisfaction, reconveyance, release, or other discharge of the security interest .…" (Civ. Code, § 882.030.)

In this case, it is undisputed that the last payment date on Tharp's deed of trust is ascertainable from the recorded documents. The recorded deed of trust states that the final payment of principal and interest was due no later than April 15, 1993. It follows that the security interest expired on April 15, 2003, four years before Tharp purported to execute the power of sale and eight years before Tharp asserted its interest in this litigation. As a result, Tharp can have had no lien senior to the county's lien because Tharp no longer had any lien at all.

Tharp maintains that the county forfeited[1] this argument by failing to raise it in the trial court. As Tharp acknowledges, however, we have discretion to consider issues not

---

[1]Tharp uses the word "waived," but its contention is that the county failed previously to assert that the deed of trust had expired under Civil Code section 882.020. A party's loss of ability to make a contention on appeal because of its failure to make it earlier is a forfeiture, not a waiver. (*In re Stier* (2007) 152 Cal.App.4th 63, 74 ["'[F]orfeiture' [and not waiver] is the correct legal term to describe the loss of the right to raise an issue on appeal due to the failure to pursue it in the trial court."].) Tharp's brief also includes the following: "Civil Code section 880.020 is a 'personal privilege and is waived if it is not raised as an affirmative defense by the debtor.' (Miller & Starr, California Real Estate 3d, § 10:128.)" The citation of the treatise is both technically and substantively erroneous. The quoted language is in section 10:161 of Miller and Starr, not section 10:128. More importantly, the quoted language does not pertain to the marketable title legislation that begins with Civil Code section 880.020 and that includes the 10-year expiration provision in section 882.020. Miller and Starr say the *statute of limitations* is a personal privilege that is waived if not raised as a defense by the debtor. (4 Miller & Starr, Cal. Real Estate (3d ed. 2013) § 10:161, p. 10-591, fn. omitted.) This is a reference to the six-year statute of limitations set forth at California Commercial Code section 3118. (4 Miller & Starr, *supra*, at p. 10-591, fn. omitted.) That period is not at issue in this case. The expiration provisions of Civil Code section 882.020 are separate and distinct from the underlying statute of limitations and were enacted to provide a degree of finality that the statute of limitations does not provide, as we have explained.

raised below. "[A]n appellate court may review a forfeited claim—and '[w]hether or not it should do so is entrusted to its discretion.'" (*In re Sheena K.* (2007) 40 Cal.4th 875, 887, fn. 7.) The reason for the general rule against reviewing forfeited claims is that it is usually unfair to the trial court and the adverse party to take advantage of an error on appeal that could have been corrected during the trial. (*People v. Saunders* (1993) 5 Cal.4th 580, 590; *Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184-185, fn. 1.) One reason for exercising our discretion to consider the forfeited issue in this case is that giving force to Tharp's expired security interest would not be an "error that *could* be corrected by some means short of an opposite outcome in the trial court." (*Woodward Park Homeowners Assn., Inc. v. City of Fresno* (2007) 150 Cal.App.4th 683, 712.)

Another reason for exercising our discretion to consider the issue is that, contrary to Tharp's contention, the equities favor doing so. If Tharp's position were accepted, Tharp would receive a nuisance-free property at public expense. Tharp and its predecessor entity sat on their rights for 14 years after the Landeroses' debt came due. It was only when the county cleared the lot and recorded the special assessment that Tharp swiftly moved to foreclose, intending to extinguish the county's lien in the process. We will not exercise our discretion in Tharp's favor to allow it to enjoy this taxpayer-funded windfall merely because the county has been tardy in raising the point that Tharp's security interest became a nullity years before its purported foreclosure.

Citing Civil Code section 880.030, subdivision (a) ("[n]othing in this title shall be construed to … [¶] … [l]imit application of the principles of waiver and estoppel, laches, and other equitable principles"), Tharp contends that we should not consider the forfeited issue because, if it had been raised in the trial court, Tharp could have attempted to overcome it on grounds of estoppel or laches. The only consideration Tharp mentions in support of estoppel or laches, however, is the county's "excessive delay" in raising the 10-year-expiration-period issue, i.e., its failure to raise it at some point between the time of Tharp's foreclosure and the filing of the county's brief in this appeal. Tharp develops

no argument and cites no authority in support of the view that this delay could be the basis of a ruling that the county is barred by estoppel or laches from asserting that Tharp's security interest has expired. In particular, Tharp is silent about how it could have done something different—something that would have made a difference in this case—if the county had raised the point closer to the time of Tharp's foreclosure.

Tharp also maintains that we should not consider the forfeited argument because the county's failure to raise it earlier deprived Tharp of the opportunity to present in the trial court a factual dispute about whether Tharp could claim title by adverse possession. In other words, Tharp contends that it has held itself out as owner since the foreclosure and the county contests this only now. This argument is mentioned only in a one-sentence footnote, without authority and with no development of the basis of any adverse-possession claim.

### III. *The county's lien had priority*

Even if Tharp's security interest had not expired, we would agree with the trial court's conclusion that the county's lien has priority under Government Code section 25845. Tharp cannot show it is free of that lien as a bona fide encumbrancer.

Government Code section 25845 provides procedures by which a county may abate a nuisance on real property and recover the costs of abatement. These include the imposition of a "special assessment" against the property:

> "If the owner fails to pay the costs of the abatement upon demand by the county, the board of supervisors may order the cost of the abatement to be specially assessed against the parcel. The assessment may be collected at the same time and in the same manner as ordinary county taxes are collected, and shall be subject to the same penalties and the same procedure and sale in case of delinquency as are provided for ordinary county taxes. All laws applicable to the levy, collection, and enforcement of county taxes are applicable to the special assessment." (Gov. Code, § 25845, subd. (d).)

Government Code section 53931 and following set forth priority rules for liens based on "special assessments" (Gov. Code, § 53931). Section 53935 provides that when

10.

a special assessment becomes delinquent, it may be recorded as a lien on the taxpayer's real property. The lien has priority over other security interests:

> "The lien of said assessments shall be coequal to and independent of the lien for general taxes, and, except as provided in Section 53936, not subject to extinguishment by the sale of the property on account of the nonpayment of any taxes, and prior and superior to all liens, claims and encumbrances except (a) the lien for general taxes or ad valorem assessments in the nature of and collected as taxes levied by the state or any county, city, special district or other local agency; (b) the lien of any special assessment or assessments the lien date of which is prior in time to the lien date of the assessment for which the deed is issued; (c) easements constituting servitudes upon or burdens to said lands; (d) water rights, the record title to which is held separately from the title to said lands; (e) restrictions of record."

It follows from the plain meaning of these statutes that the county's special-assessment lien had priority over Tharp's deed of trust. It continued to encumber the property after Tharp foreclosed. This is the essence of the trial court's written order, and it alone justified the court in sustaining the demurrer without leave to amend.[2]

Tharp argues that the priority rule for special assessments does not apply because the nuisance-abatement assessment in this case was not a special assessment within the meaning of Government Code section 53931 and following. Tharp discusses the differences between an assessment for abating a nuisance and other special assessments, such as an assessment used to construct an improvement benefitting the property. It asserts that policy considerations favor treating the latter as special assessments for purposes of lien priority, but not the former.

---

[2]Much of the parties' briefing is devoted to discussion of competing theories of the general purposes of Government Code section 25845, including an examination of legislative history documents. It is unnecessary to consider this discussion, as in our view the plain meaning of the statute supports the trial court's decision. (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798 [no need to consult legislative history if statutory language is clear].)

11.

There is no need to consider this analysis.  Government Code section 25845, subdivision (d), provides expressly that a nuisance-abatement assessment is a "special assessment."  Government Code sections 53931 and 53935 expressly provide that a lien based on a "special assessment" has priority over private liens.  There is no reason to think the Legislature meant "special assessment" in one sense in section 53931 et seq. and in some other sense in section 25845.

Tharp relies on *Isaac v. City of Los Angeles* (1998) 66 Cal.App.4th 586 for the notion that the county's lien in this case cannot be a true special assessment.  That case is readily distinguishable.  *Isaac* involved an assessment for unpaid utility charges, which a city ordinance purported to deem a superpriority lien.  (*Id.* at p. 591.)  The Court of Appeal held that the superpriority lien could not be upheld as a special assessment because no special benefit was conferred on the property; utility services are an ephemeral commodity, not a permanent improvement to the property.  (*Id.* at p. 597.)  The superpriority lien also could not be upheld on the basis of the city ordinance purporting to authorize it because the ordinance was preempted by state law on lien priority.  (*Id.* at pp. 599-602.)  In this case, the nuisance abatement did confer a special benefit on the property, and the superpriority lien was authorized by state law, i.e., Government Code sections 25845 and 53935.

We turn next to the bona fide purchaser/bona fide encumbrancer issue.  Government Code section 25845, subdivision (e), provides that, in addition to imposing a special assessment having the same status as a tax, a county "also may cause a notice of abatement lien to be recorded."  This lien has the same effect as a recorded abstract of judgment (Gov. Code, § 25845, subd. (g)), which, among other things, means it attaches to all the real property owned by the debtor in the county in which it is recorded.  (Code Civ. Proc., § 697.340.)  The parties disagree about the purpose of this provision, but they agree that the notice of assessment of abatement costs the county recorded was not an

"abatement lien," and that no abatement lien within the meaning of subdivision (e) was ever recorded.

When, as in this case, an abatement lien is not recorded, a subsequent bona fide purchaser or bona fide encumbrancer takes its interest in the property free of any lien for abatement costs if the purchase or encumbrance occurs before the first installment of county taxes becomes delinquent:

> "[I]f the board of supervisors does not cause the recordation of a notice of abatement lien pursuant to subdivision (e), and any real property to which the costs of abatement relates has been transferred or conveyed to a bona fide purchaser for value, or a lien on a bona fide encumbrancer for value has been created and attaches to that property, prior to the date on which the first installment of county taxes would become delinquent, then the cost of abatement shall not result in a lien against that real property but shall be transferred to the unsecured roll for collection." (Gov. Code, § 25845, subd. (f).)

Relying on this provision, Tharp says it is not subject to a lien for abatement costs because it was a bona fide encumbrancer based on the 1988 deed of trust.

Tharp's position reflects a misunderstanding of the bona fide purchaser/bona fide encumbrancer doctrine. Miller and Starr summarize the doctrine succinctly:

> "A preferential priority is given to a purchaser or encumbrancer who acquires a lien or title interest in good faith and for value without knowledge or notice of a prior interest. Such a party is called a 'bona fide purchaser' or a 'bona fide encumbrancer,' depending on whether the interest is an estate in the property or a lien on the property." (5 Miller & Starr, Cal. Real Estate (3d ed. 2009) § 11:50, p. 11-170, fns. omitted.)

The same treatise also states: "The subsequent interest of a bona fide purchaser or encumbrancer achieves priority over a prior interest where the subsequent party acquires an interest in the property for a valuable consideration, in good faith, and when he or she first records the instrument creating his or her interest without knowledge or notice of the prior interest ...." (5 Miller & Starr, Cal. Real Estate, *supra*, § 11:50, p. 11-171, fns. and italics omitted.)

The doctrine is embodied in Civil Code section 1214:

13.

"Every conveyance of real property or an estate for years therein, other than a lease for a term not exceeding one year, is void as against any subsequent purchaser or mortgagee of the same property, or any part thereof, in good faith and for a valuable consideration, whose conveyance is first duly recorded, and as against any judgment affecting the title, unless the conveyance shall have been duly recorded prior to the record of notice of action."

As these authorities indicate, the purpose of the bona fide purchaser/bona fide encumbrancer doctrine is to protect a *subsequent* purchaser or encumbrancer that acquires its interest without notice of *prior* interests. There is no rule that those who acquire interests in property in good faith and for value are unaffected by *later-arising* interests in the same property unless they had notice before they acquired their own interests. That rule would make no sense, for any later-arising interests by definition would not exist at the time of the purchase or encumbrance, so notice of them would be in all cases impossible. Priority liens for taxes and special assessments would generally fail, even against the owners who had originally been delinquent. In reality, this does not occur because the status of later-arising interests is determined by the normal rules of priority, including the exceptions to the first-in-time doctrine for tax liens and special assessments. There is no reason why the concept of a bona fide purchaser or encumbrancer would work differently in the context of Government Code section 25845 than in any other context.

Tharp became an encumbrancer in 1988. The county's lien arose in 2007.[3] Tharp thus was not a *subsequent* encumbrancer and therefore the bona fide purchaser/encumbrancer doctrine is inapplicable here. The trial court recognized this

---

[3]Tharp does not claim it was a bona fide purchaser without notice when it took title in 2007. It could not make such a claim with any plausibility, since its December 13, 2007, letter to the county shows that it had actual notice of the county's lien before the foreclosure sale was completed.

14.

when it wrote that Tharp was not a bona fide encumbrancer because it "did not originally acquire an interest in the property subject to County's lien .…"

Tharp relies on *County of Butte v. North Burbank Pub. Utility Dist.* (1981) 124 Cal.App.3d 342, in which it was held that an assessment for unpaid sewage charges did not become a priority lien because a preexisting (not subsequent) deed of trust holder was a bona fide encumbrancer. (*Id.* at p. 347.) The court in *County of Butte*, however, did not consider whether the fact that the assessment came later than the deed of trust meant the notion of a bona fide encumbrancer did not apply. "Language used in any opinion is of course to be understood in the light of the facts and the issue then before the court, and an opinion is not authority for a proposition not therein considered." (*Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2.)

Next, Tharp argues that the county cannot enforce a priority lien based on the special assessment because its settlement agreement with the Landeroses provided that the debt for the nuisance abatement would be "unsecured." The words of the settlement agreement do not support this contention. The agreement states: "Costs of the abatement shall be *a lien against the property* and shall be placed on the tax roll." (Italics added.) A lien is a security interest in property. "Lien" is defined as "[a] legal right or interest that a creditor has in another's property, lasting usu. until a debt or duty that it secures is satisfied." (Black's Law Dict. (9th ed. 2009) p. 1006, col. 1.) The settlement agreement contemplated that the county would have a security interest in the property.

Tharp also asserts, "[T]he county contracted to create a lien against the property, not a special assessment," but this contention fails since the concept of a lien against the property and that of a special assessment are not in opposition to each other. The county contracted to create a lien based on a special assessment for nuisance-abatement costs incurred pursuant to Government Code section 25845, subdivision (d): a special-assessment lien. Tharp's view is that the lien referred to in the settlement agreement is an abatement lien within the meaning of Government Code section 25845, subdivision (e),

15.

not a special-assessment lien created in accordance with subdivision (d), but there is no basis in the settlement agreement for this interpretation. Assuming an abatement lien would have had a lower priority than a special-assessment lien, we see no reason why the county would have entered into an agreement for that lower priority.

Even if the agreement were read to support Tharp's claims, Tharp would not be able to enforce it, for Tharp is not a party to the settlement. A third party can sue to enforce a contract only if it is an intended beneficiary of the contract. (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 688, p. 775.) Tharp does not claim to be an intended third-party beneficiary of the settlement agreement.

Finally, Tharp argues that it would be "inherently unconstitutional" to "allow[] the County to *contract* away [Tharp's] collateral .…" The county did not contract away Tharp's security interest. It imposed a priority lien *authorized by statute*.

Tharp concedes that the Legislature has a valid constitutional power to create, by express act, tax and assessment liens that have priority over preexisting private liens. In a passage quoted by Tharp, Miller and Starr state:

> "In many cases … enabling legislation specially provides that [a] particular tax or assessment lien has seniority over prior, pre-existing private liens. The tax lien only has priority over private liens when the statute that provides for the lien *expressly* provides that it has priority over private liens regardless of the date the tax lien is recorded. This authority of the legislature to create a tax lien that is senior to pre-existing private liens is a constitutional exercise of the police power." (5 Miller & Starr, *supra*, § 11:157, p. 11-511, fns. omitted.)

Tharp accordingly also concedes that all of its causes of action depend on its view that the county's special-assessment lien was unauthorized.

As we have said, Government Code section 25845, subdivision (d), expressly provides that an assessment for nuisance-abatement costs is a special assessment enforceable by all means available for the enforcement of taxes, and Government Code section 53935 expressly provides that a special assessment is a lien having priority over preexisting private liens. In light of this and of Tharp's concessions (and our view, *ante*,

16.

that Tharp's security interest was long expired when the county asserted its rights), it is unnecessary to examine separately Tharp's claims that its constitutional rights were violated by a taking of property for public use without just compensation and that its property was taken without due process of law.

For all the above reasons, we conclude that the trial court properly sustained the demurrer without leave to amend.

### *DISPOSITION*

The judgment is affirmed. Respondent County of Tulare is awarded costs on appeal.

_____
Sarkisian, J.[*]

WE CONCUR:


_____
Kane, Acting P.J.


_____
Peña, J.

_____

[*]Judge of the Superior Court of Fresno County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17.